ALLEN & ROBINSON *v.* F. H. REDWARD and HAWAIIAN LODGE, NO. 21, of Free and Accepted Masons.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED, MAY 9, 1895.          DECIDED OCTOBER 31, 1895.

BICKERTON AND FREAR, JJ., AND MR. W. R. CASTLE OF THE BAR, IN PLACE OF JUDD, C.J., DISQUALIFIED.

Findings of fact by the trial court, jury waived, like the findings of a jury, cannot be set aside if there is sufficient evidence to support them.

Payments made under a building contract by the owner to a material-man upon the order of the contractor, may by agreement between the contractor and material-man and in the absence of any other agreement with the owner, be applied first to cash advanced by the material-man for labor and then to materials furnished.

The lien provided by statute in favor of a sub-contractor or material-man is not limited to the amount payable under the original contract to the principal contractor.

An abandonment of the work by the contractor after payment in full for the proportion of work then done, is not a bar to the enforcement of a lien for materials furnished by a sub-contractor before the abandonment.

An agreement of the contractor to give sufficient evidence that the premises are free from liens and to indemnify the owner for payments made in discharging liens does not estop a material-man from enforcing a lien.

An assignment to the material-man by the contractor of all moneys payable under the contract, accepted by the owner "subject to all the conditions of the contract," does not estop the material-man from enforcing a lien.

A material-man is not entitled to a lien for material which, though furnished to a contractor for a building, never was incorporated in the building, but was delivered at the contractor's shop and by him disposed of for his own benefit.

The notice of a lien for material furnished by a sub-contractor should show the nature of the material for which the lien is claimed.

OPINION OF THE COURT BY FREAR, J.

The defendant Redward contracted with the defendant Hawaiian Lodge to do, for $7234, the carpenter work, wrought and cast iron work and plastering upon the building known as the Masonic Temple situated on the easterly corner of Hotel and Alakea streets in Honolulu. The contractor abandoned the work before its completion and after $4700 had been paid under the contract, this being more than was payable for the proportion of work then done. The Hawaiian Lodge thereupon completed the work at a cost exceeding the original contract price. The plaintiff, S. C. Allen, doing business under the name of Allen & Robinson, claims to have advanced $2392 cash for labor and to have furnished materials of the value of $5194.45, including importation charges, to the contractor for this building. The $4700 paid under the contract was all paid to the plaintiff upon the order of the contractor. The plaintiff now sues for a balance of $2886.45 and interest thereon and claims a lien on the building and lot, under the "Act to Provide for Liens of Mechanics and Material-men," Ch. 21, Laws of 1888.

The case was tried in the Circuit Court of the First Circuit, jury waived, where judgment was rendered for the plaintiff for $2834.79, besides interest, this being the amount claimed

less $51.66, the value of materials shown not to have been delivered, and the lien was sustained for this amount upon the building and premises of the defendant Hawaiian Lodge.

The twenty-three exceptions enumerated in the bill of exceptions may be considered in substance under a few heads.

*First*, the exceptions to the following findings of fact made by the trial court, namely: that all the materials in question were delivered except certain items of the value of $51.66; that the plaintiff advanced cash to the contractor for labor; that there was an agreement between the contractor and the material-man that payments should be applied, first, on account of the cash advanced, and then on account of the materials furnished; that the payments were so applied; that the lien claimed was not for cash advanced; that there was not such confusion in the account that items for which the law gives no lien could not be separated by inspection; and that the materials were not furnished solely on the credit of the defendant Redward.

These findings of fact, regarded, as they must be, as in the nature of a verdict of a jury, cannot be set aside, there being sufficient evidence to sustain them.

*Secondly*, evidence of the agreement relating to application of payments was properly admitted. In the absence of an agreement upon this subject with the owner, it was competent for the contractor and material-man to agree upon the application of payments made to the latter upon the order of the former. The rules relating to the application of payments in general apply to cases of this kind. Phill., Mec. Liens, Sec. 287; 2 Jones, Liens, Sec. 1307; 1 Am. Ld. Cas., 3rd Ed., 286, 299.

*Thirdly*, the Circuit Court correctly held that the amount for which the property may be charged with a lien in favor of a sub-contractor or material-man is not limited to the amount payable by the owner to the contractor.

In a few States, sub-contractors are given no lien at all upon the property, but a lien only on the debt payable by the owner

to the contractor.   In many States a direct lien is given on the property, but with an express limitation to the amount of the original contract price.   Under these two classes of statutes, the right of the material-man has generally been held to be controlled by the state of the account between the owner and contractor—the material-man or sub-contractor being merely subrogated to the rights of the contractor.

Under other statutes a direct lien is given upon the property, either without qualifying or limiting expressions as to amount, as in many States, or with expressions clearly showing that there is no limit, as in a few States.   Under such statutes, courts have generally held that the material-man may have a lien for the reasonable value of the materials furnished by him, even though in excess of the amount payable to the principal contractor under the original contract.

Our statute is of this nature.   It gives a direct lien upon the property to the sub-contractor without limit with reference to the original contract price.   The statute provides:

"Section 1.   Any person or association of persons furnishing labor or material to be used in the construction or repair of any building, structure, railroad or other undertaking, shall have a lien for the price agreed to be paid for such labor or material (if it shall not exceed the value thereof) upon such building, structure, railroad or other undertaking, as well as upon the interest of the owner of such building, structure, railroad or other undertaking in the land upon which the same is situated."

This section of the statute gives a lien to "any person furnishing material" and makes no distinction between contractors and sub-contractors.   Other sections, 5 and 6, show clearly that sub-contractors were intended to be included.

The lien is "for the price agreed to be paid."   This may mean the price agreed either between the owner and contractor or between the contractor and material-man.   It would naturally mean the price agreed to on one side at least by the "person furnishing the materials" and that would be the sub-contractor if the materials were furnished by him.

There is not only no express or implied limit of the sub-contractor's lien to the price agreed between the owner and contractor, but the clause "if it shall not exceed the value thereof," would seem to have been inserted chiefly for the purpose of preventing collusion between the contractor and sub-contractor whereby they might otherwise bind the owner beyond the real value of the materials or labor.    This clause would hardly have been inserted to protect the owner against his own agreement.    Indeed, he would ordinarily be estopped from saying that the price he agreed to pay exceeded the real value.

Again, as a rule the price agreed upon between the owner and the contractor is a lump sum for all labor and materials covered by the contract, and in such cases the only "price agreed to be paid for such labor or material" as may be furnished by the several material-men or sub-contractors is the price agreed between them and the contractor.

Section 6, which provides that when the work or material is furnished to a contractor, that is, by a sub-contractor, laborer or material-man, "the owner may retain from the amount payable to the contractor sufficient to cover the amount due or to become due to the person or persons who filed the lien," may, at first glance, seem to indicate that the Legislature contemplated that there would be sufficient to satisfy all liens out of the original contract price, and that therefore there was no intention to give any further right.    But this inference by no means follows.    The sub-contractor is given a lien directly on the property, not on the debt payable to the contractor, the owner is not obliged to retain the money; he is merely permitted to do so as one means of protection to himself against the wrong or mistake or inability of the contractor.    He is not permitted to retain the money contrary to the provisions of his contract, except after the notice of the lien has been filed, and yet that notice may be filed and proceedings commenced to enforce the lien at any time within three months (Sec. 2) after the completion of the building for which the materials were furnished; that is, the notice may be filed and the lien enforced

after the time when under the usual terms of building contracts the contractor would have been paid in full.    It is clear, therefore, that Section 6 authorizes a retention of money payable to the contractor, only as a protection to the owner so far as there is any that may be retained, and that it does not imply that sub-contractors are to be bound by payments made to the contractor according to the terms of the contract.

We are aware that a different view has been taken by some courts.    See *Fullenwider v. Longmoor*, 73 Tex. 480; *Burt v. Parker County*, 77 Ib. 338; *Knowles v. Joost*, 13 Cal. 620; *Renton v. Conley*, 49 Ib. 187.    The statutes under which the Texas and early California decisions were rendered, while resembling our statute somewhat, yet differed from it in several respects,—whether sufficiently to justify the decisions made under them, we need not say.    The wording of our own statute as well as the decided weight of authority requires us to hold that the sub-contractor is not thus limited.    The later California decision above cited appears clearly to have been erroneous under the statute then in force.

The Supreme Courts of Nevada, Washington and New Mexico refused to follow the Supreme Court of California in construing their statutes which were copied from the California statute. See *Hunter v. Truckee Lodge*, 14 Nev. 24; and *Spokane, etc. Co. v. McChesney*, 21 Pac. R. (Wash.), 198, in which a similar decision of the Supreme Court of New Mexico is referred to; also *Colter v. Frese*, 45 Ind. 96, and *Henry, etc., Co. v. Evans*, 97 Mo. 47.    In these cases the California and other decisions are discussed.

Statutes of this nature are sustained from the legislative view, in point of policy, on the ground that an owner of property ought to compensate those who add to its value by furnishing materials for its improvement, and that he may protect himself from liability beyond the contract price by employing only such contractors as are financially responsible, or by withholding from them such part of the contract price as may be sufficient to satisfy liens, or by requiring them to give bonds for the delivery

of the property free from liens, or by other means. The tendency of recent legislation seems to be to limit the lien of the sub-contractor to the amount of the original contract price unpaid at the time when the notice of the lien is filed. But courts must construe statutes as they find them.

*Fourthly*, it is obvious from the above reasoning, that an abandonment of the work by the contractor does not work a forfeiture of the rights of a sub-contractor with reference to materials furnished before the abandonment. The case would, of course, be otherwise if the statute merely subrogated the sub-contractor to the rights of the contractor.

*Fifthly*, it was provided in the contract that the contractor should before each payment, if required, give sufficient evidence that the premises were free from all liens; that if at any time there should be any liens for which the owners might be liable they might retain from the moneys payable to the contractor sufficient to indemnify them; and that if there should be any such claim after all payments were made the contractor should refund to them all moneys that they might be compelled to pay in discharging the liens. These provisions might estop the contractor from filing a lien, but they do not estop a sub-contractor from doing so. They imply, on the contrary, that such liens may be filed and provide for indemnity in case they shall be filed. *Evans v. Grogan*, 153 Pa. St. 121; *Creswell Iron Works v. O'Brien*, 156 Ib. 172.

The assignment by the contractor to the plaintiff of all moneys payable under the contract was accepted by the Hawaiian Lodge "subject to all the conditions of the contract." This did not estop the plaintiff from filing a lien. It did not make him a party to the contract. The contract itself was not assigned, but only the moneys payable under it, and, no doubt, the plaintiff could not recover on this assignment any moneys beyond what would otherwise have been payable to the contractor. But the present claim is not for moneys payable by the terms of the contract; it is for the enforcement of a lien under the statute.

*Sixthly*, certain stairway material, of the value of $100, was delivered, not at the building, on which the lien is claimed, but at the shop of the contractor, who disposed of the same in satisfaction of a claim for rent against himself.

Courts elsewhere are about equally divided upon the question whether a lien may be sustained for material sold for, but not actually incorporated in, a building. By some courts it is held that the contractor is the quasi-agent of the owner, that the material-man is justified in trusting him, the contractor, inasmuch as the owner has presumably selected him as one in whom confidence may be reposed, and that it would be unjust to require the material-man (and impracticable for him) to follow up the material and prove that it was all used in a particular building.

We cannot go so far. The owner does not, either expressly or by implication, give the contractor any authority to incur liability on his behalf for materials, but on the contrary he expressly stipulates that the contractor himself shall furnish all the materials and do all the work for a definite sum. The statute, it is true, makes the contractor the agent of the owner, against the wishes of the latter, but to a very limited extent only. The material-man is not justified in relying upon the honesty of the contractor because the owner has to some extent done so. He is not bound to sell his materials and he must form his own judgment of the integrity of the contractor. He is sufficiently protected, as against the owner, by the presumption that the materials were actually used for the purpose for which they were sold, throwing the burden of proof upon the owner to show the contrary. If the materials were sold directly to the owner or to the contractor with the express approval of the owner for use in a particular building, the latter would probably in most cases be estopped from showing a different use, but where the sale is to the contractor without the express approval and perhaps without the knowledge of the owner, and the materials are not delivered at the building, and a misapplication is made of them, it would certainly be unjust to the owner to

hold him liable.    The contractor is the agent of the owner for the purpose of purchasing suitable materials to be put into the building but not for the purpose of purchasing materials for his, the contractor's, own benefit.    The theory of the statute is that the material-man may follow his material and hold liable him into whose building it has become incorporated and the value of which it has enhanced.    This object does not require that the owner should be held liable for material which, through the wrong of the contractor, never went into the building.    In case of loss under such circumstances, it is, in our opinion, more just that, as between innocent parties, the loss should remain where it falls.    The material-man has duties to perform for himself as well as privileges to enjoy at the expense of others.    He cannot act with carelessness and throw the loss, if any, on innocent third parties.    The statute is to be strictly construed as being in derogation of the common law and arbitrarily giving preferences to certain creditors for claims of no greater merit than others which are left unsecured.    See *Lucas v. Redward,* 9 Haw. 23.    The statute, which gives a lien to persons "furnishing labor or material to be used in the construction or repair of any building," is easily capable of this construction.    See *Deardorff v. Everhartt,* 74 Mo. 37; *Chapin v. Paper Works,* 30 Conn. 461; *Hunter v. Blanchard,* 18 Ill. 318; *Sylvester v. Coe, etc., Co.* 80 Cal. 510; *Weir v. Barnes,* 57 N. W. (Neb.), 750; *Lee v. King,* 13 So. (Al.), 506; *Taggard v. Buckmore,* 42 Me. 77.

*Lastly,* the Circuit Court sustained the lien for certain columns, plates, girders, grills and gates, of the value of $1145.90, and for windows, doors, astragals, transoms, balusters, sash, ventilators, blinds and sand, of the value of $1646.70.    The objection to the allowance of these items is, that they were not covered by the description of the materials in the notice of the claim of lien required by the statute.

In the notice the lien was claimed "for materials furnished, to wit, lumber and hardware."    The materials in question do not come within the definitions of the terms "lumber" and

"hardware," as found in the Century and Standard dictionaries, and as given in this case with reference to these particular materials by persons familiar with these terms as used in these islands —the architect and the contractor under the building contract in question and the manager of the plaintiff's business. This was also apparently the finding of fact by the trial Judge, who disposed of the point on the question of law. The argument is that the statute is sufficiently complied with by a claim for "materials" only, and that the words "lumber" and "hardware" may be treated as surplusage.

A partial enumeration which purports to be a complete enumeration is worse than none at all, because it is misleading. See *Whittier v. Mill Co.* 36 Am. St. Rep. (Wash.) 149. And even if a claim merely for "materials" were sufficient, there would be considerable ground for limiting a person who did not make such claim, to the claim actually made. He ought not to expect more than he claims, especially if his claim is misleading.

But, is a claim merely for "materials" sufficient? The statute requires that the "notice shall set forth the amount of the claim, the labor or material furnished, a description of the property sufficient to identify the same, and any other matter necessary to a clear understanding of the same."

Many statutes elsewhere upon this subject require a full or itemized account, but our statute, like some others, does not go so far. In *Lonkey v. Wells,* 16 Nev. 271, the statute required the material-man to file a claim "containing a statement of his demand." The lien was claimed for "material, to wit: lumber, doors, sash, blinds, moldings, casings and mill work." The court held this a sufficient description, as it showed the "nature and character" of the demand. That our own statute does not require a full itemized statement is implied by the requirement of Section 5, that "the defendant shall be served with a detailed specification of the claim, providing that no such specification shall have been furnished before proceedings were commenced."

It seems to us, however, that the nature or character of the materials should be shown. The statute requires the notice to "set forth * * * the materials furnished." This means more than that the claim may be simply for "materials." It means at least that the class or kind or nature of the material should be shown. The provision that the notice shall set forth "any other matter necessary to a *clear understanding* of the same" also bears out this construction. While the words descriptive of the materials furnished should be construed liberally, yet no materials should be included which do not fairly come within the generally accepted definitions of those words.

The statute is artificial, arbitrary. It gives a material-man exceptional privileges, but it gives these only on condition that he shall comply with the terms of the statute. The statute provides that the "lien shall not attach" unless notice, of the character described, is filed. As has been already said, the statute is to be strictly construed. It is in the power of the material-man to give a proper description of the materials he has sold. It is reasonable to require him to do so, in view of the extraordinary favors extended to him. And this should be required in justice to the owner, purchasers, incumbrancers, other material-men and all other persons whose interests may be affected by the lien. The reason has greater force when, as in this case, the materials are furnished, not to the owner himself, but to the contractor and perhaps without any knowledge on the part of the owner. See *Russell v. Bell*, 44 Pa. St. 44; Phill., Mec. Liens, Sec. 349. If the lien were claimed by the contractor for all the labor and material furnished for a building under an entire contract, a more general description might perhaps be sufficient under the statute.

We find no ground for disturbing the judgment as against the defendant Redward, but as against the defendant Hawaiian Lodge the judgment is set aside and a new trial ordered.

--------

While fully concurring in the result arrived at in the foregoing opinion, which I feel compelled to do under our statute

and th'e authorities cited, yet I feel strongly that our statute should be so amended as to specifically limit the liability of owners of buildings under liens filed by mechanics and materialmen, this having been done in many of the United States and being a matter which should be controlled by local statute.

RICH. F. BICKERTON.

*F. M. Hatch* and *W. A. Kinney*, for plaintiff.
*A. W. Carter* and *C. Brown*, for defendants.