*Kinney, Ballou & McClanahan* and *H. A. Bigelow* for ward.

---

H. HACKFELD & Co., Limited, Plaintiff in Error, *v.* HILO RAILROAD Co., Limited, Defendant in Error.

ERROR TO CIRCUIT COURT, FOURTH CIRCUIT.

SUBMITTED OCTOBER 11, 1902. DECIDED NOVEMBER 10, 1902.

GALBRAITH AND PERRY, JJ., AND CIRCUIT JUDGE ROBINSON IN PLACE OF FREAR, C.J., DISQUALIFIED.

A material-man of a sub-contractor is one of the class designated by Section 1 of Chapter 21 of the Laws of 1888 as entitled to the lien therein provided for.

Such material-man is given the lien by the statute even though no contract to furnish the materials is entered into by him with the owner of the structure.

A material-man has a right to rely upon the lien given him by law as well as upon the personal liability of the sub-contractor and the presumption is, in the absence of any showing to the contrary, that in furnishing the materials he intends to avail himself of both remedies so far as necessary.

The fact that the materials are charged on the material-man's books to the contractor alone affords some evidence that they were furnished on his credit, but is not *prima facie* evidence that his credit was relied on to the exclusion of the credit of the building.

Cash advanced to a sub-contractor to be used by him in paying the laborers engaged in grading the line of a railroad, is not, within the meaning of the statute, either labor or material to be used in the construction of such railroad.

When the declaration has been filed and process issued, with the intent that service be made promptly, proceedings have been "commenced" within the meaning of the provisions of Section 2 of Chapter 21 of the Laws of 1888 that "the lien shall continue for three months, and no longer, * * * * unless the same shall have been satisfied or proceedings commenced to collect the amount due thereon by enforcing the same."

### OPINION OF THE COURT BY PERRY, J.

H. Hackfeld & Co., Ltd., brought an action in the Circuit Court of the Fourth Circuit to enforce a lien claimed against certain property of the defendant. The case was tried without a jury and judgment rendered for the defendant. Thereupon a petition for a writ of error was filed, error being assigned in certain findings of fact and rulings of law made by the trial court. Undisputed evidence shows the following facts:

On April 5, 1900, J. H. Smith and W. W. Corey, copartners, entered into a contract with the Hilo R. R. Co. whereby they agreed to do, according to certain specifications, all the grading necessary for the construction of "the Hilo railroad for a distance of about ten miles, being from station 431 at the southerly limit of the Olaa Cane Land to the Lava Flow of

29-D.

1840." On the 10th of the same month, Herman Elderts agreed with Smith and Corey to grade all of that portion of the road lying between stations 431 and 642. Thereafter Hackfeld & Co., the present plaintiffs, agreed to furnish and did furnish to Elderts certain wheelbarrows, tools, blasting powder, lumber and other material, to be used in the construction of said road-bed, and also furnished cash with which Elderts was to pay the laborers employed. The bill of particulars made a part of the notice of lien and declaration in this action is a correct statement of the items so furnished by the plaintiff to Elderts. The work done by Elderts was completed on October 4, 1900. A part of the cash advanced was repaid, but the balance of the debt due for the money loaned and for the materials furnished is still due and unpaid. For the amount of all of such unpaid balance the plaintiff claims a lien upon the railroad and its appurtenances. Notice of such lien was filed on December 19, 1900.

The trial court found, in substance, the foregoing facts. The following findings of facts and rulings of law were also made:

"10. That the evidence in this case shows quite clearly and satisfactorily that the plaintiff herein never had a contract, written or oral, expressed or implied, with the defendants Smith and Corey or the Hilo R. R. Co., Limited.

"11. That no privity existed between the plaintiff herein and the Hilo R. R. Co., Limited, or Smith and Corey, in respect of the transaction out of which this litigation grew.

"13. That no assignment of his contract or agreement with Smith and Corey by the sub-contractor, Herman Elderts, co-defendant herein, was made to the plaintiff, nor was any substitution of parties plaintiff sought or obtained by said plaintiff prior to the filing of the lien by the plaintiff, or prior to the bringing of this suit, or at any other time, or at all.

"1. The court concludes that in the absence of an assignment to which the owners or original contractors consented in writing to the sub-contract or agreement by and between the co-defendant, or sub-contractor, Elderts, and the plaintiff herein, that plaintiff cannot be substituted to the rights or liabilities of the co-defendant, Herman Elderts.

"2. That it is essential in order for plaintiff to maintain its

action that there should exist a privity between the plaintiff and defendants Hilo R. R. Co., Limited, and Smith and Corey in respect of the matter sued on.

"3.    That the filing of the lien and notice by the plaintiff herein did not make plaintiff a party to the contract nor bring it within the statute in the absence of the assignment and consent referred to in conclusion number 1 herein, nor does our statute work a subrogation of the sub-contractor's rights to the rights of any one else."

The plaintiff was the material-man of a sub-contractor. If it falls within the class designated by our statute to which a lien is given for certain materials, it is entitled to such lien even though no contract was entered into by it with the owner of the railroad or with the original contractor. In the ordinary sense, the lien does not arise out of contract but is given by law to those who are placed under certain stated conditions; it arises out of contract in the sense only, that, the statute declaring that a lien shall exist under those circumstances for the price of certain materials, the owner, when he awards a contract for the erection of a structure of his, is conclusively presumed to have so contracted with reference to the law and to have voluntarily subjected his property to the rights thus given to material-men and contractors. "This argument rests upon a misconception as to the nature and character of a mechanic's lien. This lien is a creature of the statute, and was not recognized at common law. It may be defined to be a claim created by law for the purpose of securing a priority of payment of the price and value of work performed and materials furnished in erecting or repairing a building or other structure, and as such it attaches to the land as well as the buildings erected thereon.    *    *    *    Now, it is not the contract for erecting or repairing the building which creates the lien, but it is the use of the materials furnished and the work  and labor expended  by the contractor, whereby the building becomes a part of the freehold, that gives the material-man and laborer his lien under the statute. The lien is brought into operation by virtue of the statute, and the contract for building is entered into presumably in view of, or with reference to, the statute."—*Van Stone v. Stillwell &*

*Bierce Mf'g Co.*, 142 U. S. 128, 136.   See also *McMurray v. Brown*, 91 U. S. 257, 266; *Central Trust Co. v. R. R. Co.*, 68 Fed. 90, 94, 95; Phillips Mech. Liens, §118; *Allen & Robinson v. Redward*, 10 Haw. 151.

The class to which the benefit of such liens is granted, is, of course, broader in some jurisdiction and more limited in others. Just how large it is in any particular case is to be determined in view of the provisions of the statute in force in that jurisdiction.   Section 1 of our statute (Chapter 21, Laws of 1888) reads:  "Any person or association of persons furnishing labor or material to be used in the construction or repair of any building, structure, railroad or other undertaking, shall have a lien for the price agreed to be paid for such labor or material (if it shall not exceed the value thereof) upon such building, structure, railroad or other undertaking, as well as upon the interest of the owner of such building, structure, railroad or other undertaking in the land upon which the same is situated."   This language is very broad, broader, perhaps, than that of the statutes in many of the states.  *Any* person, with but two limitations, shall have a lien.   Those limitations are (1) that such person shall furnish the labor or material and (2) that such labor or material shall be furnished specifically to be used in the construction or repair of the structure sought to be charged with the lien.   In *Allen & Robinson v. Redward, supra,* the lien of a material-man of an original contractor was recognized and enforced, and, while the point was, perhaps, not necessary to be determined, the Court would seem to have been of the opinion that *any* material-man or sub-contractor had a lien.   At page 153 it said, "the Circuit Court correctly held that the amount for which the property may be charged with a lien in favor of a sub-contractor or material-man is not limited to the amount payable by the owner to the contractor," and, after quoting section 1 (at p. 154), "This section of the statute gives a lien to 'any person furnishing material' and makes no distinction between contractors and sub-contractors.   Other sections, 5 and 6, show clearly that sub-contractors were intended

to be included." We add that, in our opinion, the statute makes no distinction between sub-contractors and material-men, or as to whether the latter deal directly with the owner, or with the original contractor or with any sub-contractor. As we construe it, if the material was sold to be used and was in fact used in the construction of the building, the person furnishing it has a lien. Whether a lien would exist for material furnished to be used but not in fact used in the construction of the building, need not be decided in this case.

Another finding made by the trial court is: "That in pursuance of the said contract between the plaintiff and co-defendant Herman Elderts, this plaintiff furnished all of the items and the cash set forth in plaintiff's Notice of Lien, to the said Herman Elderts on his personal account." To what extent, if at all, the court below based upon this finding its judgment that plaintiff was not entitled to a lien, is not clear. If the finding was intended to mean that in furnishing the material Hackfeld & Co. relied *exclusively* upon the credit of Elderts and waived its right to a lien upon the property of the Railroad Co., the finding was unsupported by the evidence; if, on the other hand, the court meant merely that the plaintiff charged the goods upon its books to Elderts and that it intended not to waive its claim for payment upon Elderts personally, then, while that was undoubtedly the fact, it would constitute no defense against the lien. The material-man had a right to rely upon the lien given him by law as well as upon the personal liability of the sub-contractor and, having that right, the presumption is, in the absence of any showing to the contrary, that he intended to avail himself of both remedies so far as necessary. "A sub-contractor, laborer, or material-man, in dealing with the contractor, is presumed to rely upon his lien upon the property. It is not necessary for him to prove affirmatively that he relied upon the credit of the building, if his labor or materials actually entered into its construction. The burden is upon the land-owner to show that he relied upon the credit of the contractor alone. The law gives the sub-contractor the right of a lien if

he complies with its requirements, and it is always to be presumed that he accepts the benefits the law confers. The fact that he brings himself within the requirements of the statute, and afterwards seeks to enforce his right, is sufficient proof that he intends to rely upon this right."—2 Jones on Liens, §1284. "The fact that the materials are charged on the plaintiff's books to the contractor alone affords some slight evidence that they were furnished on his credit, but is not *prima facie* evidence that his credit was relied on to the exclusion of the credit of the building."—*Hommel v. Lewis*, 104 Pa. St. 465. "It was not necessary to the creation of such a lien that complainants should have had an understanding that they intended to claim it. Nor is it important that they charged Larkin personally with the debt. They were entitled to both securities,—his personal liability and a lien on the property—and their reliance on the one did not impair their right to rely on the other also. They could not be put to an election between the two so long as that debt, or any part of it, remained unpaid. Nothing is shown to have been said between complainants and Larkin, either about his personal obligation to pay the debt, or the liability of the property. That, however, is of no consequence, for the lien arose, as a matter of law, from the transaction itself, and his contract for the materials made him personally liable."—*Basset v. Bertorelli*, 22 S. W. (Tenn.) 423, 424. See also *Jones v. Swan & Co.*, 21 Ia. 181, 184; *Clark v. Huey*, 12 Ind. App. 224, 234; *Wolf v. Batchelder*, 56 Pa. St. 87, 88; 2 Jones on Liens, §1332.

The ruling of the court below to the effect that the plaintiff has no lien upon the defendant's railroad for the cash advanced by it to Elderts with which the latter was to pay the laborers engaged in the grading, was, we think, correct. Cash advanced for that purpose was not, within the meaning of the statute, material to be used in the construction of the road-bed nor was it labor. The position is the same as if the money had been loaned to Elderts for the purpose of purchasing from another material for the road. If, in such case, Elderts had failed to

pay for the material, would both Hackfeld & Co. and the one actually selling and delivering the material have had a lien on the road? Clearly not. On this point, see *Godeffroy v. Caldwell*, 2 Cal. 492.

The foregoing questions are all raised by the plaintiff's assignment of errors. Whether or not the lumber furnished by the plaintiff and used by Elderts in erecting near the line of road buildings for the protection or accommodation of laborers employed in the grading, was material used in the construction of the railroad, within the meaning of the statute, need not be now determined. A similar question may arise later concerning some or all of the tools used during the progress of the work.

On the part of the defendant in error, the judgment is sought to be supported on the ground, among others, that proceedings to collect the amount due on the lien were not commenced within three months after the completion of the structure against which it was filed and that therefore the lien, if it ever existed, has been forfeited.

It may be assumed for the purposes of this branch of the case that the "structure" contemplated by the statute is the portion of the railroad situate between stations 431 and 642, and not the whole railroad, and that the structure, as thus understood, was completed on October 4, 1900. Other facts material in this connection are that the plaintiff's declaration, of which a copy of the notice of lien and bill of particulars was made a part, was filed in the Circuit Court of the Fourth Circuit on December 21, 1900, and that summons in the ordinary form was issued on the same day. On or before December 24, 1900, service was made upon one Lambert as the agent of the defendant corporation, but the sheriff's original return of this service is not with the records in the case. On July 31, 1901, a certificate reading as follows, was, by leave of court, filed by the sheriff: "I, Elderts, Deputy Sheriff of the Island of Hawaii, do hereby certify in addition to my certificate made on the summons returned in this cause on the 24th day of December, 1900, that I made due and diligent search within the jurisdiction of

this court for some officer, president, secretary, treasurer of the said defendant corporation, and I was unable to find either of such persons, and that I made service of said summons and complaint upon W. H. Lambert, the agent of said defendant corporation in charge of the business of such defendant corporation on the Island of Hawaii, and at South Hilo, aforesaid. The manner of such service upon the said W. H. Lambert has been certified to by me, to which certificate I append this addition." This refers, as we understand it, to the service already mentioned. On March 6, 1901, service of process was made on B. F. Dillingham, president of the defendant corporation.

For the defendant it was contended in the lower court on plea in abatement and is contended now, that the service attempted to be made in December, 1900, was not valid because not made on one authorized by law to receive or accept it for the corporation or to bind it thereby. Let it be assumed for the purposes of this case that this contention is sound. It still remains true and undisputed that the service of March 6, 1901, was good and valid. The question is, when are proceedings to be deemed to have been *commenced*?

"For certain purposes an action may be held to be commenced, while for other purposes the courts may deny to the action the attribute of a 'commenced' suit. But generally speaking, not noting the exceptions to and the qualifications of the doctrines, the legislation of the states and the adjudications follow three main classifications, to wit: the action is commenced when the complaint is filed, when the process is issued, or when the process is served on the defendant."—1 Encycl. Pl. & Pr. 119. One class of cases is to the effect that the suit is commenced when the petition is filed, provided it is filed with the intent that process be promptly issued and served, and another class that it is commenced when process is issued provided it is issued with the intent that it be promptly served. As between these two last mentioned lines of decisions, we need not determine now which is founded on the better reasoning, because in the case at bar not only was the declaration filed but process was

issued within the time prescribed by law and these acts were done, so far as appears from the record, with the desire and intention on the part of the plaintiff that service should be made as soon as possible.

Section 2 of the statute on liens, says, in part: "The lien shall continue for 3 months, and no longer, after the completion of the construction or repair of the building, structure, railroad or other undertaking against which it shall have been filed, unless the same shall have been satisfied, or proceedings commenced to collect the amount due thereon by enforcing the same." The nature of the proceedings necessary to be followed in order to enforce the lien is set forth, in a general way, in Section 5. "The liens hereby provided may after demand and refusal of the amount due, or upon neglect to pay the same upon demand, be enforced by proceedings in any court of competent jurisdiction, by service of summons, as now practiced. Such summons shall set forth the ordinary allegations in assumpsit, and, in addition thereto, note that a lien has been filed. Before proceeding to trial, the defendant shall be served with a detailed specification of the claim, provided that no such specification shall have been furnished before proceedings were commenced. Judgment upon such proceedings shall be as in ordinary cases, and may be enforced by execution as now allowed. In case the contract for services or material upon which the lien has accrued shall have been directly with the owner of the property, an attachment may issue in connection with the suit upon the filing of a bond of indemnity to the said owner in such sum as the Magistrate or Court may fix. If it shall appear that such bond is insufficient, the Magistrate or Court, shall cause a new bond to be filed for a greater amount, or with additional security." There is nothing in the section last quoted or in any other portion of the Act, making it essential that service be had before the action can be regarded as commenced. The "service of summons" referred to in section 5 is but one step in the proceedings. Other steps are mentioned in the same section, as, for example, the service of a detailed specification of the claim, the

judgment "as in ordinary cases," execution "as now allowed," and, under certain circumstances, an attachment. "Service of summons, as now practiced," presupposes the filing of a declaration and the issuance of summons. Certainly not all of these steps need be taken in order to satisfy the provisions of section 2. Where is the line to be drawn? Whether the mere filing of the declaration would be sufficient or not, we are of the opinion that when the declaration has been filed and process issued, with the intent that service be made promptly, proceedings have been "commenced" within the meaning of the statute under consideration. This gives to the language used by the legislature its ordinary meaning and accords with justice. To hold otherwise would be to cause the plaintiff to suffer for the possible negligence or wrong-doing of the sheriff and for fraudulent evasion of service by the defendant. Under our statutes, Civil Laws, § 1218, it is the duty of the sheriff, and not of the plaintiff, to serve process.

In *Hail v. Spencer*, 1 R. I. 17, 19, 20, in holding that the issuing of the writ is the commencement of the action, the court said: "Now it is admitted that the writ, in this case, was issued prior to the expiration of the six years, and, unless, the actual receipt of the service of it, by the officer, be necessary to constitute the commencement of the action, it was commenced within the six years. In the ordinary acceptation of terms, the action is certainly commenced when the writ is issued, but to answer the intent of the statute, is something more than this required? If more, what is it? Is it the service of the writ? If so, it is the sheriff who commences the suit, and not the plaintiff. And the ability of the sheriff to make the service may depend on a thousand circumstances, over which neither he nor the plaintiff may have any control; nay, even on the will of the debtor himself, as his absence from the county. We cannot suppose that the legislature, in any event, intended to make a man's rights dependent on such contingencies.

"Is it the receipt of the writ by the sheriff that is required in order to constitute the commencement of an action? If so, its commencement may still depend on contingencies wholly inde-

pendent of the plaintiff, as the sheriff's occasional absence, his sickness, or his want of official qualifications. But at any rate, why should the receipt of it by the sheriff be required. As long as the defendant is untouched by the precept, of what consequence is it to him, whether it be in the hands of the plaintiff or the sheriff? How can his liability be affected by this or that event? The truth is, that in contemplation of law, the writ is issued on the application of the creditor, by the sovereign power of the state, through the instrumentality of its officers. It is the state's precept or command, and is issued and the action commenced, whenever it is in the hands of the plaintiff, or his attorney, ready to fulfill its purpose. In this view the commencement of the action depends wholly on the will, or the diligence of the plaintiff. If he loses his right, it is wholly the result of his neglect. It should, however, be followed up by such acts as show that it is a real and not a pretended commencement of a suit. For if there be an unusual lapse of time between the day of the date of the writ, and that of its delivery to the sheriff, and wholly unexplained, it might raise a presumption against the correctness of the date, which would force on the plaintiff the necessity of proving its correctness." See also *Cross v. Barber*, 16 R. I. 266; *Gosline v. Thompson*, 61 Mo. 471; *Spofford v. Huse*, 9 Allen 575, 6; *Bunker v. Shed*, 8 Met. 150, 3; *Tribby v. Wokee*, 74 Tex. 142, 3; *Day v. Lamb*, 7 Vt. 428.

If, then, the plaintiff in filing its declaration and in procuring the issuance of process, acted with the necessary intent, these proceedings were commenced within the time required and its lien was continued in force. Upon the present state of the case the judgment under review cannot be supported on the theory that such intent was lacking.

The judgment is set aside and a new trial ordered.

*Kinney, Ballou & McClanahan* and *H. A. Bigelow* for plaintiff.

*Hatch & Silliman* and *F. W. Milverton* for defendant.