## HONOLULU IRON WORKS COMPANY AND THEO. H. DAVIES & COMPANY, LIMITED, *v.* LYMAN H. BIGELOW, CHAIRMAN OF THE BOARD OF HARBOR COMMISSIONERS OF THE TERRITORY OF HAWAII, ET AL.

### No. 2194.

ARGUED SEPTEMBER 16, 1935.          DECIDED OCTOBER 31, 1935.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF BANKS, J., UNABLE TO ATTEND ON ACCOUNT OF ILLNESS.

608

OPINION OF THE COURT BY PETERS, J.

This appeal presents for review the disposition by the trial judge sitting in equity of moneys remaining in the possession of the Territory subject to the terms of a contract for public work, after abandonment by the contractor and completion by the surety, adverse claims to which were on the one hand made by furnishers of labor and material and on the other by the surety upon the contractor's bond.

The facts which are undisputed are in substance as follows:  On June 4, 1932, the Territory by its board of har-

bor commissioners entered into a contract with one K. Asakawa for the construction and completion, according to prescribed plans and amended specifications, of a certain public work, to-wit, a wharf and appurtenances at Honoapu, Hawaii county. The contract and specifications provided that the contractor furnish and pay for all labor, material, tools and equipment required to construct and complete the work for a sum certain; that he furnish satisfactory evidence that the persons, firms or corporations who had done work or supplied material had been paid or satisfactorily secured; that there be retained as a reserve twenty per cent of all progress payments due the contractor and that such retained percentages continue to be retained and should not become payable until full completion and acceptance of the work and until satisfactory evidence was furnished to the board that all claims had been settled as required; that final payment should only be made upon the full and faithful performance by the contractor of his covenants, undertakings and agreements and not until full completion of the work contracted for in accordance with the plans and specifications and its acceptance by the board and not until satisfactory evidence had been furnished that the furnishers of all labor and material had been paid or satisfactorily secured, but in case of the default of the contractor to furnish such evidence of payment or security of the claims of laborers or materialmen as required such amount as might be necessary to meet said claims might be retained from the moneys due the contractor under the contract until the liability should be fully discharged or notice of such liability withdrawn.

The contractor on June 6, 1932, pursuant to and in conformity with the provisions of R. L. H. 1925, s. 161 and s. 2679 as amended by L. 1931, c. 163, gave a bond with the respondent Columbia Casualty Company as surety. In addition to the statutory conditions the bond was also

conditioned upon the delivery of the work to the Territory completed, as in the contract specified, free from all liens and claims and without further cost, expense or charge to the Territory.

The application signed by the contractor for the bond contained the following: "That in further consideration of the execution of said bond, the undersigned hereby assigns, transfers and conveys to the surety all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to the undersigned at the time of any breach or default in said contract, or that thereafter may become due and payable to the undersigned on account of such contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that such money, and the proceeds of such payments and properties shall be the sole property of the surety and to be by it credited upon any loss, cost, damage, charge and expense sustained or incurred by it under said bond."

The contractor proceeded with the work but on January 26, 1933, became financially embarrassed and unable to finish the work and abandoned the contract, whereupon the surety, pursuant to arrangements with the board of harbor commissioners, of the facts of which, however, we are not advised, undertook the completion of the work and finished the same. The amended specifications are not a part of the record and such references as are made thereto have their source in quoted excerpts contained in the bill of complaint and admitted as correct by the respondents' answers.

At or about this same time, as alleged and admitted by the pleadings, the contractor executed another assignment to the surety company but the assignment was not offered in evidence and we are not advised of its contents or legal effect. We deem the same, however, immaterial

as it could not confer any greater rights upon the assignee than the equitable assignment of June 8, 1932, contained in the application for the bond.

On September 28, 1933, upon "final settlement" by the Territory, as that term is employed in R. L. H. 1925, s. 2679, as amended by L. 1931, c. 163, s. 3, the contracting officer of the Territory determined and certified that the amount deemed by him to be due to the contractor under the contract was the sum of $10,154.88. On August 6, 1934, the petitioners and others, as furnishers of material used in the prosecution of the work, all of whom appear herein either as petitioners or respondents, secured a judgment against the contractor and the surety company in a statutory action on the contractor's bond, permitted by R. L. H. 1925, s. 2679, as amended by L. 1931, c. 163, s. 3, in the aggregate amount of $26,237.84. The bond being inadequate to pay the aggregate of the respective amounts adjudged to be due to the judgment creditors judgment was given to each creditor pro rata of the amount of recovery and the surety on the bond paid the full amount of its obligation into court for distribution pursuant to the judgment. The aggregate of the claims of the judgment creditors exceeds the net proceeds of the bond by $7199.84. From the amount found due the contractor upon final settlement there was paid to the surety by the Territory, as the latter's estimated cost of the completion of the work, the sum of $4635, leaving a balance in the possession of the Territory of $5519.88.

In the trial court the surety claimed that it was entitled to the entire remaining balance due from the Territory (a) as assignee under the assignment included in its principal's application for a bond, dated June 8, 1932, (b) as assignee under the alleged assignment of January 26, 1933, and (c) as subrogee of the Territory; or in the alternative it was entitled to be reimbursed in the sum of

$1767.95, necessarily incurred by it in completing the contract, in addition to the sum of $4635 previously received by it from the Territory. Said sum of $1767.95 included the sum of $750 paid by the surety to its attorney for services rendered by him "in connection with taking over the contract upon the contractor's abandonment thereof, advice during time of completion and services re securing cost of completion after the work had been completed by the surety." On the other hand, the petitioners and the other judgment creditors claimed that the sum of $1767.95 was not costs necessarily incurred in completing said contract in addition to the sum of $4635 previously paid the surety by the Territory, and that they had an equitable lien on the entire remaining balance prior and superior to the rights of the surety therein, considering the latter either as subrogee of the Territory or as assignee of the contractor.

The trial judge allowed two of the items of costs included in the sum of $1767.95 claimed by the surety and denied the remainder, including the item of $750, the attorney's fee, paid the attorney of the surety; held that the judgment creditors had an equitable lien in the balance of retained moneys remaining payable after the deductions of the two additional items of costs; that such lien was superior to any rights acquired by the surety under its assignment, and ordered the balance finally determined be prorated among the judgment creditors.

A decree was entered accordingly. The surety appealed but subsequently waived all errors assigned to the disallowance of items included in its claim for reimbursement with the exception of the error assigned by it to the disallowance of the item of attorney's fee.

Of the sum of $10,154.88, certified upon final settlement as due the contractor from the Territory, $2157.02 was the aggregate of progress payments due; $783.44 was the aggregate of extras due, and $7204.42 was the aggre-

gate of retained percentages. Of the sum of $4635 paid the Columbia Casualty Company upon its completion of the contract $2167.02 was withdrawn from the aggregate of progress payments and $2467.98 withdrawn from the aggregate of retained percentages. So that the balance due under the contract of $5519.88 consists of $4736.44 of retained percentages and $783.44 for extras. This was the condition of the fund at the time the within suit was instituted.

Ordinarily a provision for retained percentages of progress payments until final completion is for the purpose of securing the completion of the work and to provide a fund in the event of the default of the contractor with which to pay the expenses of completion. *Quinn* v. *United States*, 9 Otto (U.S.) 30, 34. Similarly, a provision that final payment should only be made upon the full and faithful performance by the contractor of his covenants, undertakings and agreements and not until full completion of the work contracted for in accordance with the plans and specifications and its acceptance by the board. In the instant case another and additional purpose is apparent which shall be discussed later.

Upon the abandonment of the contract by the contractor and the completion of the work by the surety there redounded to the surety under the equitable doctrine of subrogation the privilege to resort to the remedies which the creditor, the Territory of Hawaii, was capable of asserting against its debtor, Asakawa, one of such remedies being the right, based upon the original contract, to appropriate the retained percentages to reimburse itself for cost of completion. "[The surety's] right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor (the United States) was capable of asserting against its debtor [the contractor], had the security not satisfied the

obligation of the contractors, and one of such remedies was the right based upon the original contract to appropriate the ten per cent retained in its hands. If the United States had been compelled to complete the work, its right to forfeit the ten per cent and apply the accumulations in reduction of the damage sustained remained. The right of [the surety] to subrogation, therefore, would clearly entitle him when, as surety, he fulfilled the obligation of [contractor] to the government, to be substituted to the rights which the United States might have asserted against the fund." (The words "surety" and "contractor" are substituted in brackets in the quotation for the names of the surety and contractor respectively in the citation.) *Prairie State Bank* v. *United States,* 164 U. S. 227, 232.

The aggregate of retained percentages remaining is in excess of the aggregate of the additional items allowed the surety as additional cost of completing the work and the disallowed item of attorney's fee. Hence it is unnecessary in this connection to consider the rights of the surety, if any, as subrogee of the Territory, in the amount due from the Territory for extras.

A completing surety, however, acts in its own right and not for the contractor or in the right of the contractor when it performs the obligation of its principal to the owner. It acts in its own right by reason of its privilege as surety so to do. "Upon a default by the contractor the surety has the privilege of coming forward and completing the work. In doing so he is not acting for the contractor or in the right of the contractor; he is acting in his own right, which is to perform the obligation of his contract with the owner. * * * When the sureties, therefore, in the case at bar came forward to fulfill the obligation and perform the contract, they did so in their own right by reason of the privilege of suretyship so to do * * *." *Union Stone Co.* v. *Board of Chosen Freeholders,* 65 Atl. 466, 471. Its

rights, however, as a completing surety are to reimbursement and not to damages for the breach of any contract, express or implied, to which it and the owner are parties. Reimbursement arises from its contract of suretyship upon the assumption of the obligation of its principal and is confined to the reasonable cost made necessary by completion. Hence the extent of reimbursement is measured by the reasonable necessities of completion.

The completion of the public work contemplated by the contract in the instant case did not require the performance of legal services. Any legal services rendered the surety were the result of the surety's personal necessity and not included in the reasonable necessities of completion. They were rendered purely for its own purposes and not for the purposes of the contract.

Holding, as we do, that the assignment of June 8, 1932, created no rights in the surety prior or superior to the claims of laborers and materialmen and the aggregate of such outstanding claims being in excess of the unpaid balance due from the Territory under the contract we deem it unnecessary to decide whether such assignment was legally effective to reimburse the surety for attorney's fees paid its attorney as a "loss, cost, damage, charge and expense sustained or incurred by it under said bond," as that language is employed in said assignment.

The provisions for retained percentages and of withholding final payment had the additional purpose of protecting labor and materialmen in the event of the default of the contractor and his failure to satisfy claims by them. The retained percentages were not payable nor could final payment be made until satisfactory evidence was furnished to the board of harbor commissioners, that all persons, firms or corporations who had done work or supplied material had been paid or satisfactorily secured. These provisions reasonably admit of the construction that the

retained percentages and withdrawal of final payment until such evidence was furnished had for their additional purpose the protection of the suppliers of labor and material. The furnishing of such evidence was a condition precedent to any successful demand by the contractor or those holding under him for either retained percentages or final payment. *Fisken* v. *Milwaukee B. & I. Works,* 49 N. W. (Mich.) 133; *Pacific Rolling-Mill Co.* v. *English,* 50 Pac. (Cal.) 383; *Independent School District* v. *Mardis,* 76 N. W. (Ia.) 794. And any action instituted for the recovery of the same would be premature. It does not appear from the evidence that any effort was made by the contractor or those holding under him to furnish evidence, satisfactory or otherwise, that the suppliers of labor and material had been paid or satisfactorily secured. On the contrary, it affirmatively appears that the judgment creditors in the statutory action on the contractor's bond were only paid pro rata and that the judgment in their favor remains partially unsatisfied. Whether or not further or additional unpaid claims for labor or material exist does not appear. Under the circumstances no demand for the retained percentages or final payment could be successfully made by the contractor or his surety. Obviously the abandoning contractor, leaving claims for labor and material outstanding and unpaid in excess of the total amount due from the Territory under the contract, had no rights against the fund. And having none there were none to which the surety could be subrogated as a potential subrogee of the contractor. *American Surety Co.* v. *Finletter,* 274 Fed. 152, 155.

Nor did the assignment to the surety put it in a better position as assignee than as subrogee. It took its assignment with notice of and subject to the provisions contained in the contract and specifications inhibiting the payment of retained percentages and the making of final

payment until satisfactory evidence was furnished that the claims of suppliers of labor and material were settled. Until such evidence was furnished the integrity of the fund was proof against attack by the assignee of the contractor. The surety, as assignee, could acquire no greater rights in the fund than its assignor. *Allen & Robinson* v. *Redward,* 10 Haw. 151, 157; *Lynip* v. *Alturas School Dist.,* 141 Pac. (Cal.) 835, 838.

The surety made no claim to the fund as subrogee of labor or materialmen paid by it.

The judgment creditors contend that they have an equitable lien in all retained moneys after all claims of the government against the contractor have been satisfied and after the surety has been reimbursed for completing the work under the contract in a case such as this where the surety finishes the work upon the contractor's default.

The questions of whether or not unpaid labor and materialmen on public work have, under the laws of the Territory of Hawaii, an equitable lien in the fund found upon "final settlement" to be due, or whether or not there inured to unpaid labor and materialmen in the instant case an equitable lien in such fund are debatable ones. But we do not consider the determination of these questions necessary to our conclusions. The presence or absence of an equitable lien is not decisive of the ultimate rights of labor and materialmen in the fund now in the possession of the Territory.

The board of harbor commissioners had it within its power under the contract and specifications to retain all moneys due from it under the contract until satisfactory evidence was furnished that all claims of labor and materialmen had been settled. It was privileged to stand upon its rights of withholding payment or at its election to make distribution of the fund to those entitled thereto. *Independent School District* v. *Mardis, supra.* The board

as a party to the within suit elected to waive its·right of retention and by its answer prayed that a determination be made as to the parties entitled to the amount sought to be paid with respect to the project and that a decree and order be entered accordingly. Its action was tantamount to an interpleader in equity. By so doing it committed to the court in equity the final determination of to whom the fund should be distributed in accordance with. the rights of the parties under the contract and specifications.

The inhibitions of the contract and specifications in respect to payment, as previously said, were for the obvious additional purpose of protecting labor and material. Hence the fund should and only could be applied to the protection of those remaining for whose protection the inhibitions were devised. The Territory by final settlement had declared that all claims that had accrued to it against the fund had been fully satisfied. The defaulting contractor had no right to the fund. The surety, neither as subrogee nor assignee of the contractor, had any right to the fund. Labor and materialmen alone remained of those for the protection of whom the inhibitions were provided. Under that state of the case and the election of the board to distribute, it was to labor and materialmen alone that the fund could be equitably devoted.

Such distribution, however, cannot be confined exclusively to the satisfaction of the claims of the judgment creditors. All suppliers of labor and material are entitled to participate. The provisions of the contract and specifications are general in their definition of the class of creditors sought to be protected. They are "all persons, firms or corporations who have furnished labor and material," without qualification as to whether they should reduce their claims to judgment in an action on the contractor's bond or otherwise. Hence all persons, firms or corporations who have furnished labor or material on the

work and whose claims remain unsettled are entitled, irrespective of whether they have reduced their claims to judgment in an action on the contractor's bond, to share ratably in the balance due from the Territory under the contract and now retained by and in the possession of the Territory. In determining the proportionate interests of the respective judgment creditors in said fund their claims should be considered as at present subsisting.

Whether or not all persons, firms or corporations who have furnished labor or material on the work and whose claims remain unsettled are before the court does not, however, appear. While the bill of complaint refers in general terms to "other claims for work done and materials furnished" it contains no allegations that there are unknown claimants for work done or material furnished and the only unpaid labor or materialmen made parties to the suit are the judgment creditors in the action upon the contractor's bond. The bill was no doubt drafted upon the theory that the only outstanding claims for labor and material furnished were those of the judgment creditors. Nor does the joint answer of the chairman of the board of harbor commissioners and the auditor of the Territory nor the answer of the surety indicate otherwise. Whether the other respondents filed any answer does not appear. But apparently all the parties whose pleadings are a part of the record on appeal took it for granted that all persons equitably interested in the fund, including all unpaid labor and materialmen, were parties to the suit. Perhaps this is correct. But the record should affirmatively show the fact. In the event that it should ultimately appear that there are persons, firms or corporations other than the judgment creditors who have furnished labor and material and have not been paid or secured therefor they should be made parties to the proceeding and their respective rights to the fund determined.

620

Before the trial court could attain jurisdiction to ascertain to whom the fund belonged and to decree accordingly it was necessary that "all persons equitably interested in the funds" be made parties to the suit. *Newhall* v. *Kastens,* 70 Ill. 156, 161. Unpaid labor and materialmen are "persons" equitably interested in the fund and all such should be made parties to the suit so that their rights as well as the rights of the judgment creditors in the fund be determined.

The within cause is therefore remanded to the trial court with instructions to vacate so much of its decree as holds that the judgment creditors have an equitable lien in the balance due from the Territory, under the contract now retained by it and in its possession, proportionate to their respective claims; that the court satisfy itself that all necessary parties are before the court and if not, by appropriate proceeding consistent with due process remedy such nonjoinder; and finally to take such further proceedings in the cause as may be necessary, consistently with this opinion.

*Smith, Wild, Beebe & Cades* for petitioners filed a brief but did not argue.

*W. B. Pittman,* Attorney General, and *G. P. Kimball,* Deputy Attorney General, for the chairman of the board of harbor commissioners and the territorial auditor, filed a brief but did not argue.

*W. R. Ouderkirk* (also on the briefs) for the respondent surety company.

*R. A. Vitousek* (*Smith, Warren, Stanley & Vitousek* on the brief) for respondents Lewers & Cooke, Hutchinson Sugar Plantation Company, Standard Oil Company of California, P. M. Nielson and The Gregg Company.

*R. K. Murakami* for respondent L. K. Igarashi; and *F. Patterson* and *W. T. O'Reilly* for respondent Hawaiian Welding & Machine Company filed a brief but did not argue.