CHRISTIAN E. RAMLOSE, Respondent, v. CHARLES DOLLMAN and NATIONAL SURE-TY COMPANY, Appellants.

St. Louis Court of Appeals, March 31, 1903.

1. **Contract, Building: CONDITION PRECEDENT: PETITION, SUFFICIENCY THEREOF.** Unless the contract sued on contains a condition or conditions precedent, which plaintiff must perform before he can demand of defendant a performance of the contract, the allegation in the petition that plaintiff has performed all the conditions of the contract is not essential to the stating of a cause of action.

2. ———: ———: **BREACH OF CONTRACT: DELAYS NOT PREJUDICIAL.** Where, in an action for the breach of a building contract, defendants alleged that plaintiff had unreasonably deferred making certain payments, but there was no evidence that defendants were prejudiced on account of these delays, the trial court's finding that the delays were not unreasonable, will not be disturbed.

3. ———: ———: **LIQUIDATED DAMAGES: REASONABLE, WILL BE UPHELD.** A stipulation in a building contract, that the contractor should pay $10 per day as liquidated damages for delay in completing the building within the specified time, is not unreasonable, and will be upheld, where it is shown that the rental value of the building was $300 per month.

4. ———: **DEMURRAGE RETAINED FOR DELAY: ACTION NOT-WITHSTANDING PROPERLY BROUGHT.** Where the owner of a building retained out of the amount he had agreed to pay for its erection the demurrage stipulated for delay in completing the building according to the time fixed in the contract, he simply withheld what belonged to him, and was not estopped thereby from bringing an action against the contractor for a breach of the contract.

5. ———: ———: **BALANCE DUE ON CONTRACT: REFUSAL TO ACCEPT SAME: NO BAR TO SUIT.** Where the owner of a building offered to to pay the contractor and his surety a small amount due on the contract for the erection of the building, before suing them for a breach of the contract, and they refused to accept it, they are not in a position to insist on this default as a bar to a recovery in an action.

6. ———: ———: **CAUSE TRIED ON ORIGINAL PLEADINGS: AMENDMENT TO CONFORM TO PROOFS AFTER FINDINGS.**

Where the original pleadings in an action raised every issue on which any evidence was heard and on which the court made a finding, an alleged error in permitting a party to amend his pleadings so as to conform to the proofs, after the court had arrived at its findings, will not be considered on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft,* Judge.

AFFIRMED.

### STATEMENT.

The suit is on the following contractor's bond:

"*Know all Men by these Presents*: That Charles Dollman as principal and National Surety Company, a Missouri corporation, as security, are jointly and severally held and firmly bound unto Thomas Warren, obligee, in the sum of nine thousand dollars lawful money of the United States of America, well and truly to be paid to the said Thomas Warren, for which payment well and truly to be made, we bind ourselves, and each of us by himself, our and each of our heirs, executors, administrators, and successors or assigns, firmly by these presents. Sealed with our seals and signed with our hands, this first day of May, in the year of our Lord eighteen hundred and ninety-five.

"The condition of the above obligation is such, that whereas the said Charles Dollman has on the day of the date of these presents, executed and entered into a certain contract for the erection of certain buildings in said contract described, which contract is hereto annexed: Now if the above named obligee and the said Charles Dollman shall respectively well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and the said Charles Dollman shall keep the said obligee, Thomas Warren, harmless and indemnified from and against all and every claim, demand, judgments, liens and mechanic's liens,

costs and fees of every description incurred in suits or otherwise, that may be had against him or against the buildings to be erected under said contract, and shall repay the said Thomas Warren all sums of money which he may pay to other persons on account of work and labor done or materials furnished on or for said buildings, and if the said Charles Dollman shall pay to the said Thomas Warren all damages he may sustain, and all forfeitures to which he may be entitled by reason of the non-performance or mal-performance on the part of said Charles Dollman of any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void, otherwise the same shall remain in full force and virtue.

"Witness our hands and seals," etc.

The petition alleged an assignment in writing of the bond by Warren to plaintiff on July 25, 1899, without alleging that Warren had performed or kept all the conditions of the building contract referred to in the bond, on his part alleged the following breaches of the bond by Dollman:

"For specific breaches of the condition of said bond plaintiff assigns the following: That the said Charles Dollman did not well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled. That under the terms of the said contract, the said Charles Dollman agreed and undertook that the said buildings in said contract mentioned should be completed ready for use and occupancy on or before September 1, 1895, that said Dollman should pay to said Warren the sum of ten dollars as liquidated damages for each and every day after said date until said building should be completed and ready for use and occupancy. Plaintiff further states that said building was not completed and ready for use and occupancy until the first day of November, 1895, and that thereby there was due and owing to the said

Thomas Warren the sum of $610 on account of the same; all of which said sum is still due and unpaid.

"For another and further breach of said bond, plaintiff states that the said Charles Dollman did not keep the said Thomas Warren harmless and indemnified against all and every claim, demand, judgment, liens and mechanic's liens, costs and fees of every description incurred in suits or otherwise that might be had against said Warren or against said buildings erected under said contract. That on or about the twelfth day of April, 1899, in an action in which the said Dollman was defendant, Hazelhurst Lumber Company recovered a judgment against Henry D. Viser and L. T. Sanders, subcontractors under said Dollman, and others in the St. Louis Circuit Court on a demand for material furnished for said buildings, and said demand was adjudged by said court to be a lien on the buildings aforesaid, and the land on which the same was situated. That said Thomas Warren was compelled to pay and did pay on or about June 27, 1899, the sum of ten hundred and ninety-four dollars and one cent in settlement of said judgment and costs. That said Dollman has never repaid to said Warren any part of said sum. That by reason thereof said Thomas Warren has been damaged in the sum of $1,094.01.

"Plaintiff further states that by reason of the failure of defendants to keep the condition of said bond, the said Warren has been damaged in a total sum of $1,704.01."

Defendants Dollman and the National Surety Company filed separate answers. They are, however, identical in respect to the defenses relied on at the trial. These defenses are as follows:

"This defendant further answering said petition, says that article 9 of the contract between said Charles Dollman and said Thomas Warren referred to in the petition herein was and is as follows:

" 'It is hereby mutually agreed between the par-

ties hereto that the sum to be paid by the said owner to to the contractor for said work and materials shall be $9,000, subject to conditions and deductions as hereinbefore provided, and that such sum shall be paid in current funds by the owner to the contractor in installments, as follows: when first floor timbers are laid, seven hundred dollars; when second floor timbers are laid, eight hundred dollars; when roof is on, four thousand five hundred dollars; when top floors are laid, fifteen hundred dollars; when finished, fifteen hundred dollars. All payments to be made by the party of the second part under this contract shall be made to the National Surety Company in trust for the use and benefit of the party of the first part, for the purpose of performing the covenants and agreements of the party of the first part as herein provided. The final payment shall be made within . . . days after this contract is fulfilled. All payments shall be made upon written certificates of the architects to the effect that such payments have become due. If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises, made obligatory in consequence of the contractor's default.

"Said defendant avers that said Thomas Warren did not perform his part of the said article 9 with respect to the time of payments of the various amounts set forth therein, on the contrary, he delayed making payment of each and every of said installments set forth in said article 9 long beyond the period set for

the payment of the same as provided for in said article in said contract; that he particularly delayed the payment of $2,990.27 to various dates and times for various portions of same to on and between the date of November 7, 1895, and June 25, 1896, and that in addition thereto said Warren wholly failed to pay under his said contract the sum of $589.73, and never has paid the same.

"Wherefore, this defendant says that by reason of the premises, it was and is wholly released from its obligation as surety on said bond sued upon in this action."

Both answers also contained a general denial.

The reply is a general denial to both answers.

The issues were tried to the court sitting as a jury.

The sixth article of the building contract was read in evidence by plaintiff and is as follows:

"Art. 6. The contractor shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, the building to be completed ready for use and occupancy on or before September first. A forfeiture of ten dollars per day after the above date provided that," etc.

The ninth article of the building contract is correctly set forth in the answers of defendants. The other parts of that contract are not material to the controversy.

Plaintiff's counsel then offered in evidence mechanic's lien of the Hazelhurst Lumber Company v. Viser et al., in the St. Louis Circuit Court, No. 159, page 491, together with record of judgment in said cause, page 503, of the records of the St. Louis Circuit Court.

Plaintiff's counsel also offered in evidence the execution. Said documents, in effect, showed that a mechanic's lien was filed by the Hazelhurst Lumber Company on the property mentioned in the petition and in

the above contract and bond, and that in said suit judgment was entered on April 13, 1899, against Viser et al., with the lien on the property in question amounting to $945.13; interest, $11.70; costs, $91.30; advertising, $31.90; levy, $1.00; commission, $12.98; total, $1,094.01.

Christian E. Ramlose, being duly sworn, testified that he was the plaintiff in this cause. He was shown the above mentioned bond and assignment, and stated that Thomas Warren signed them.

Witness Ramlose then testified that he was occupying the building in question; that said building was ready for occupancy about November 10, 1895, but it was not quite completed then. Witness moved in November 1, 1895, but it was not quite completed until the tenth or fourteenth. About the tenth of November, 1895, witness loaned the money to Warren to satisfy said execution and judgment.

On cross-examination by Mr. Davidson, witness stated that he bought the said premises from Thomas Warren while the building was in course of construction. Witness advanced to Warren the amount necesary to pay the said judgment and execution, and now holds Warren's note for same.

August M. Beinke, being duly sworn, testified that he was an architect and superintendent; that he was architect of the building mentioned in the contract between Warren and Dollman. He was shown the contract above mentioned, dated the first day of May, 1895, between Charles Dollman and Thomas Warren, and identified the signatures of Dollman and Warren.

At this point the plaintiff rested.

The defendants, to maintain the issues on their part, introduced the following evidence:

Charles Dollman, being duly sworn, on direct examination, testified that at the time the building was turned over to Mr. Warren there was $589.73 unpaid, besides some extras that were due witness. Thomas

Vol 100 app—23

Warren refused to pay the $589.73, and assigned as ground for his refusal that he was entitled to hold in on account of delay in constructing the building.

When the lumber company lien suit was filed witness went to Mr. Warren and told him he would like to have $580. He said: "If you will pay that $580 to the surety company, I will satisfy it and have the lien released." Mr. Warren declined to do it.

"Q. I will ask you whether or not you could have settled that claim at that time with that money?

"Objected to. Objection sustained and exception noted."

Witness was shown a paper and identified it as a statement that Thomas Warren gave him. Said paper is marked "Exhibit No. 1," and is as follows, to-wit:

"St. Louis, June 24, 1897.

"Mr. Chas. Dollman:

In account with Thomas Warren.

1895.

| | | |
|---|---:|---:|
| July 5, to check.................................$ | 700 | 00 |
| July 26, to check........................ | 800 | 00 |
| September 3, to check..................... | 308 | 55 |
| September 17, to check.................... | 100 | 00 |
| October 23, to check...................... | 174 | 85 |
| October 29, to check...................... | 3,916 | 60 |
| 58 days' demurrage, as per contract...... | 580 | 00 |
| November 7, to check..................... | 1,500 | 00 |
| 1896. | | |
| March 13, to check....................... | 261 | 97 |
| March 13, to check....................... | 68 | 30 |
| June, to order for C. E. Ramlose......... | 125 | 00 |
| June, to order for C. E. Ramlose......... | 160 | 00 |
| June 25, to order for Tower Grove P. M.... | 295 | 00 |
| | $8,990 | 27 |

The building was completed the latter part of October. Witness stated that the paper marked "Exhibit 1" is in the handwriting of Mr. Warren. The con-

tract price was $9,000. After allowing fifty-eight days for delay, which Thomas Warren claimed, there would still be a balance due of $9.73, which had never been paid.

Witness stated that the first two certificates given by the architect for payments to be made on this building were duly presented to Mr. Warren, and neither of them were paid upon presentation. The first one was presented to him, and Warren claimed that he had lost his copy of the contract and bond. Witness was of the opinion that there was nearly two weeks' delay in paying the first certificate. The second certificate was issued and was not paid until about a week after it was presented. Witness only got two certificates from the architect. All moneys were paid through the National Surety Company.

Witness was shown a paper dated June 22d, signed "Architect," and identified it as the architect's certificate handed to him by Mr. Beinke. Said instrument is marked "Exhibit 2" and is as follows, to-wit:

"St. Louis, June 28, 1895.

"Mr. Thos. Warren:

"Dear Sir: The first payment of seven hundred dollars is due Mr. Chas. Dollman, as per contract, when first floor beams are laid.

"August M. Beinke, Architect."

Witness handed this paper to the surety company the same day he received it.

Witness was shown architect's certificates dated July 17, 1895, signed, "Beinke, Architect," and identified the signature. Said instrument is offered in evidence and marked "Exhibit 3."

"St. Louis, July 17, 1895.

"Mr. Thomas Warren.

"Dear Sir: Please pay to Charles Dollman the sum of eight hundred dollars, being second payment on your factory building corner of Eleventh and Monroe

streets, as per contract.        Respectfully,

"Aug. M. Beinke, Architect."

R. A. Smith, a witness for defendants, testified that he was connected with the National Surety Company and stated that the architect's certificate dated June 28, 1895, was paid on July 5th; the one dated July 17th was paid on July 26th; that several demands were made for payment of these certificates on defendants before they were paid.    He testified that he received the following letter from Warren:

"St. Louis, June 15, 1896.

"Mr. Ruffin A. Smith, G. A. National Surety Co., City.

"Dear Sir:   Yours 13th noted.   After Mr. Ramlose's claims are settled by allowance to him of $310—which I understand from you is his agreement—$279.73 balance, I am ready and willing to pay on the contractor's order, properly indorsed by your company, in full of all claims against me on contract of Chas. Dollman, Esq., which was for, say $9,000; provided he completed building by or before September 1, 1895; or at rate of $10 per day less for each and every day's default in said time of completion.

"I paid on contractor's orders as follows, viz:

| | |
|---|---:|
| July 5, 1895 | $ 700.00 |
| July 26, 1895 | 800.00 |
| September 7, 1895 | 308.55 |
| September 17, 1895 | 100.00 |
| October 23, 1895 | 174.85 |
| October 29, 1895 | 3,916.60 |
| November 7, 1895 | 1,500.00 |

1896.

| | | |
|---|---:|---:|
| March 13 | $ 330.27 | |
| 58 days in default | 580.00 | $8,410.27 |
| Amt. your agreement with C. E. Ramlose | | 310.00 |
| | | $8,720.27 |

Leaving balance to apply on
contract .... ............ .... 279.73
_____
$9,000.00

"Yours truly,
"THOMAS WARREN."

On May 18, 1899, Warren wrote Messrs. Mc-Keighan, Barclay & Watts, attorneys for the National Surety Company, the following letter:

"Dear Sirs: Yours 17th noted. The National Surety Company must see to the lien, so far as I am concerned. I sold the notes with bond long since. Nine dollars and seventy-three cents is the amount to credit of contract with C. Dollman, and will honor his order through National Surety Company for that amount.                    "Very truly,
"THOMAS WARREN."

On cross-examination Smith testified that he did not remember what excuse Warren offered for the delay in making the two payments.

In rebuttal Warren testified that when the demand was made on the first certificate of the architect, he had lost his copy of the contract and waited until he could procure a copy to see if the payment was due under the contract. He testified that Dollman never told him that if he (witness) would pay $580, he (Dollman) would satisfy the Hazelhurst Lumber Company's lien; that no certificate of the architect had been presented to him by Dollman or the National Surety Company for any balance due on the contract; that notice of the lumber company's lien was first served on him about January 21, 1896; that prior to that time notice of other liens by subcontractors had been served on him; that on this account he made the several payments to the National Surety Company in advance of their becoming due upon written orders of Warren of which the following is a copy:

"St. Louis, Mo. . . .

"Mr. Thomas Warren,

"St. Louis, Mo.

"You are hereby authorized, and the National Surety Company does hereby consent, for you to pay the amount of the within order, $ . . . , to . . . , without waiving any of the rights, recourses or benefits under the bond executed by said company, guaranteeing the fulfillment of your contract with Charles Dollman.

(Signed.)    "NATIONAL SURETY COMPANY,

"By RUFFIN A. SMITH,

"General Agent."

He testified that the monthly rental value of the premises was $300; that after this suit was commenced Dollman asked him to give him (Dollman) one hundred and fifty or two hundred dollars and he would disappear and not show up at the trial; that he had no interest in the suit and in this way he would help plaintiff to get a judgment against the National Surety Company; that $7,500 was paid on certificates of the architect and $910 on the written waivers of the surety company without the architect's certificates.

At the request of the parties the court made a finding of the facts, the material parts of which are as follows:

"3.    That the building referred to in said contract was, by the terms thereof, to have been completed and ready for occupation on or before the first day of September, 1895, and that it was not so ready for use and occupation until sixty-one days thereafter, and that said delay was not occasioned, by any change or addition in or to the work required by said plans and specifications; and that by the terms of said contract there was a forfeiture of ten dollars per day after the above date, to-wit, after September 1, 1895; but that the said Warren has claimed and does claim a forfeiture for but the fifty-eight days, at ten dollars a day, or $580.

"4.    That on account of the contract price of nine

thousand dollars to be paid under said contract, the sum of $8,410.27 has been paid, leaving a net sum of $589.73 still in the hands of said Warren, for whom the said building was constructed, the same being $9.73 more than the forfeiture of ten dollars per day for fifty-eight days, amounting to $580, and claimed and retained by the said Warren under the terms of the contract.

"5. That said contract provides that 'all pay-ments shall be made upon written certificates of the architect,' and are to be made to the defendant surety company.

"The architect's certificates were issued for the first four payments as and when required by the terms of the contract as follows:

"The first one on the twenty-eighth day of June, 1895, for $700, which was paid on the fifth day of July, 1895.

"The second one on the seventeenth of July, 1895, for $800, was paid on the twenty-sixth day of July, 1895.

"The third one the twenty-fourth day of October, 1895, for $450, which was paid on presentation.

"The fourth one on the seventh day of November, for $1,500, which was paid on presentation.

"That afterwards other payments were made before their maturity, and were made upon the written request and waiver of the defendant surety company, and that there was never any final certificate issued upon the completion of the building, as required by the contract, nor was there any demand made, with a presentation or offer of a written waiver, by the defendant surety company, for such payment; and that all of said pay-ments so made were made either upon written cer-tificates or upon written requests and waivers thereof, as above stated, and that all architect's certificates were paid within a reasonable time after presentation, and that at no time was refusal of payment of any of said certificates made by the said Thomas Warren.

"6.    That on the twenty-first day of January, 1896, the Hazelhurst Lumber Company gave notice to the owner, Thomas Warren, of its claim of $823.23 against said building, and its intention to file a lien therefor within ten days from said date if the sum was not paid, and that afterwards the said Hazelhurst Lumber Company filed a mechanic's lien for the same, and afterwards, and within the time fixed by law, brought suit thereon in the circuit court of the city of St. Louis against all necessary parties, and such proceedings were had therein that a judgment with a mechanic's lien against said property was rendered and sustained on the twelfth day of April, 1899, in the sum of $945.13, with interest at the rate of six per cent per annum, and costs of suit; and that afterwards, on the twenty-eighth day of June, 1899, the said judgment was satisfied and paid by said Thomas Warren on execution and after levy by the sheriff under said execution upon the property in question, and that the sum so paid was $1,094.01, as follows:

| | |
|---|---:|
| Debt | $945.13 |
| Interest | 11.70 |
| Court costs | 91.30 |
| Advertising | 31.90 |
| Levy | 1.00 |
| Sheriff's commissions | 12.98 |

"7.    That the value of the property in question, including the buildings and real estate, was about fifteen thousand dollars.

"8.    That the forfeit of ten dollars per day after September 1st, as provided by said contract, taken in connection with the evidence as to the rental value of the premises in question and the nature and character of the same, and the purposes for which it was intended, is not unreasonable as liquidated damages, and that the same should be and is so considered and found by the court.

"9. That on the twenty-seventh day of June, 1899, the said Thomas Warren duly assigned to the plaintiff, Christian E. Ramlose, all of his right, title and interest in and to the cause of action sued on.

"10. It therefore follows that the plaintiff, Christian E. Ramlose, has been damaged by reason of the said mechanic's lien judgment in the sum of $1,072.11, and the further sum of $580, being the sum of ten dollars per day for fifty-eight days, the number of days delay claimed for by said Warren, for delay in the construction of said building, making a total amount of damages sustained by the plaintiff of $1,652.11, and it further appearing, as above found, that the said Warren has in his hands the sum of $589.73, the balance unpaid on account of said contract price of $9,000, the plaintiff should recover only the difference between said sums of $1,652.11 and $589.73, or the sum of $1,062.38, and judgment should therefore be entered against the defendant Dollman and the said surety company in the sum of $9,000, the amount of the penalty of the bond sued on, with damages in the sum of $1,062.38, with interest thereon from the fifteenth day of July, 1899, the date of the institution of this suit, and that execution issue therefor, and it is so ordered."

To all of the above findings defendants duly objected and excepted.

Leave was then given plaintiff to amend reply in regard to the unpaid balance of $589.73 to conform to the proofs. This amended reply is as follows:

"Plaintiff for reply to the answers of the defendants denies each and every allegation of new matter therein contained. Further replying, plaintiff admits that the said Warren has retained and now holds the sum of $589.73, being the balance of the contract price for the construction of said building; but plaintiff says that no final certificate has ever been issued by the architect, as required by the contract, for the payment of said sum, nor has any demand ever been made there-

for by defendant National Surety Company; of which said sum plaintiff says that $580 was and is due and payable to the said Warren under the terms of the contract on account of the delay in the completion of said building, as stated in plaintiff's petition.

"Having fully replied, plaintiff renews his prayer for judgment."

Thereupon the court rendered judgment for plaintiff for the penal sum of the bond to be discharged on the payment of the damages assessed, $1,062.38, with legal interest thereon from July 15, 1899.

Defendants filed a motion for new trial and the following affidavit in support thereof:

"Robert A. Holland, Jr., being duly sworn, on his oath says: He is of the counsel for the defendant, the National Surety Company, in said cause above entitled, and participated in the trial thereof on behalf of the said defendant; that, had opportunity been afforded, said defendant by its attorneys could have submitted to the court testimony tending to show that certificates by the architect required by the contract mentioned in said cause, for the payment of money under said contract, had been waived by a general course of dealing between the parties to said contract, during the performance thereof, and had the allegations stated in the amended reply been made of record prior to the hearing of the evidence in said case, that this defendant would have offered evidence to the court tending to show that the making of certificates for payments under said contract had been waived by a course of dealings between the parties to said contract; this affiant further states that the proof which said defendant would have submitted in that behalf consists of the oral evidence of Charles Dollman and Ruffin A. Smith, and affiant believes that said facts might have been further corroborated by other witnesses whose name affiant is unable at present to give, and by the dealings between the parties to said contract; this affiant further states that this defendant

was surprised by the ruling of the court permitting an amendment of said reply of plaintiff, and that this defendant has been, in the opinion of this affiant, prejudiced and surprised by said ruling permitting said amendment; and affiant further states that no opportunity was afforded to this defendant to introduce evidence as aforesaid, thereby to meet the allegations in the plaintiff's amended reply. And this affiant further states that the said defendant, had opportunity been afforded by the court, could and would have introduced testimony tending to prove that prior to the bringing of this action demand had often been made upon plaintiff's assignor for payment of the sum mentioned in plaintiff's amended reply, and that such demands could have been proved by the witnesses already named and by others, as this affiant has been informed by some of said witnesses; and this affiant avers that the said defendant was surprised by the ruling and order of the court permitting the amendment of said reply, and believes that this defendant was prejudiced by said order. And further affiant saith not.

"ROBERT A. HOLLAND, JR.

"Subscribed and sworn to before me this thirteenth day of July, A. D. 1900.

"HENRY TROLL,

(Seal.) "Clerk Circuit Court,

"City of St. Louis, State of Missouri."

The motion was overruled. Defendant then filed a motion in arrest of judgment which the court also overruled. Thereupon defendants duly appealed.

*McKeighan & Watts* and *Rob't A. Holland, Jr.* for appellant National Surety Co.; *B. O. Davidson* for appellant.

(1) Plaintiff's petition did not state a cause of action, and said motion should have been sustained. There was an utter failure on the part of plaintiff to

plead performance of the contract on the part of his assignor, Thomas Warren. Basye v. Ambrose, 32 Mo. 484; Taylor v. Newman, 77 Mo. 257; Ricketts v. Hart, 73 Mo. App. 653.

*Lee W. Grant* for respondent.

(1) There is no such condition precedent in the bond. Even if such an allegation had been necessary, defendant waived the defect by answering over. Sisk v. Ins. Co., 69 S. W. 690. (2) As there was nothing in the evidence to show that the risk was increased, contract changed, or that the delay caused the surety company to do, or fail to do, something which otherwise would have done, so to its damage, the surety company would not be released. Bank v. Danckmeyer, 70 Mo. App. 168. (3) On the question of liquidated damages, appellants have not brought up all of the record, and therefore can not challenge in this court the finding of the court that "the $10 a day, taken in connection with the evidence as to the rental value of the premises, the nature and character of the same, and purposes for which it was intended is not unreasonable as liquidated damages," as incorrect. Daniels v. Vories, 141 Mo. 234; Ogelbay v. K. C. College, 71 Mo. App. 339.

BLAND, P. J.—1. Defendants insist that the motion in arrest should have been sustained on the ground that the petition failed to state any cause of action. Their contention is, that it was essential to the petition that it contain an allegation to the effect that the plaintiff or his assignor had performed all the conditions of the contract imposed on Warren. The rule that requires an allegation of that kind in an action on a contract applies where the contract requires something to be done by the plaintiff as a condition precedent to his demanding performance of the contract on the part of the defendant. Basye v. Ambrose, 32 Mo. 484; Pier

v. Heinrichoffen, 52 Mo. 333; City of St. Louis v. Cruikshank, 16 Mo. App. 495. But the rule has no application to suits on contracts, when there are no precedent conditions to be performed by plaintiff to entitle him to demand performance by the defendant, nor when the right to demand performance on plaintiff's part must be preceded by a performance of a part or the whole of the contract by the defendant. By reading the building contract into the bond, as should be done, to ascertain the full scope and purpose of the bond, it will be seen that the only obligation resting on plaintiff was to pay the installments of the contract price for the construction of the building, as provided in article 20 of the contract. This obligation was not a certain and absolute one to pay. The maturity of the payments are made to depend upon performance of the contract by Dollman and the procurement by him of the architect's certificate of such performance. Roy v. Boteler, 40 Mo. App. 1. c. 222. The burden, therefore, to show that plaintiff or Warren had violated the contract in this respect was on the defendants to show that Dollman had procured the certificate; that he had performed the work under the contract which entitled him to payment. By their answer the defendants set out the stipulation in the contract in respect to payments and averred breaches thereof on the part of Warren. They thereby assumed, and rightfully assumed, the burden of proving those breaches, and that plaintiff had not performed his part of the contract.

2. It is insisted that the court erred in finding there was no unreasonable delay in paying the first and second certificates of the architect. There is not a word of evidence that defendants or either of them were in the least prejudiced by the few days' delay in making these payments, nothing to show that they suffered any loss or were put to any expense or trouble on account of the delay and we think the court's finding on this issue was eminently just.

3.   The finding of the court that the demurrage of $10 per day for delay in completing the building within the contract time was liquidated damages, is assigned as error.   The only evidence of the rental value of the property came from Warren, who placed it at $300 per month.   On this evidence the stipulated damages were reasonable and just and there was no evidence to the contrary which would authorize a court to undo the agreement of the parties that $10 a day should be regarded as liquidated damages.

4.   Defendants by separate instructions moved the court to declare the law to be that if Warren detained $589.73 of the contract price, or the sum of $580 for demurrage on account of delay, or the sum of $9.73 over and above the demurrage claimed, he could not recover, all of which instructions the court refused to give.   This ruling is assigned as error.

The evidence is all one way that there was over fifty-eight days' delay in the completion of the building. On this state of facts, Warren had a right under the contract to keep back the demurrage.   In doing so he kept what was his own, what belonged to him under the contract and we do not understand why the plaintiff should be defeated in this action for the reason that Warren kept his own moneys in his own pocket.   In respect to the $9.73 over and above the demurrage that was confessedly due on the contract, Warren offered to pay it on May 18, 1899, before this suit was begun, but defendants for some reason declined to accept it. They are in no position to charge Warren with a default in respect to the payment of this trifling sum.

5.   In respect to the amended reply, it suffices to say that the amendment was entirely useless and unnecessary.   The petition, answer and reply raised every issue upon which any evidence was heard and on which the court made a finding.

6.   Some shadowy objections were made to two questions asked the witness Smith on cross-examination

that were overruled by the court. His answers to these questions did not elicit the evidence probably expected. They were not prejudicial to the defendants, did no harm and furnish no ground for complaint.

We discover no prejudicial error in the record. The judgment is manifestly for the right party and is affirmed. *Reyburn* and *Goode, JJ.,* concur.