SOLOMON K. LALAKEA AND MOLLIE P. LALAKEA *v.*
HERBERT H. BAKER AND DOROTHY E. BAKER.

No. 4047.

ARGUED JUNE 5, 1959.          DECIDED JUNE 24, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

This is an appeal from a judgment of dismissal of an action for malicious prosecution. Appellants predicated their action on the filing by appellees of two suits against them successively for reformation of the same deed on the same ground. The sole issue on the appeal is whether appellees had probable cause to file the suits.

On this appeal only the evidence adduced in the instant action, the pleadings in the two suits, and the decision and judgment in the second suit will be considered. The record, as designated and caused to be brought to this court by appellants, contains exhibits in the second suit. Such exhibits were not admitted in evidence in the instant action and they were not within the proper scope of judicial notice by the circuit court. Consequently, they will not be considered here. (*Lalakea* v. *Baker,* 42 Haw. 616.)

Appellants originally owned lots 1 and 2 of Beckley Tract, in Waikiki, Honolulu, which they subdivided into lots A, B, C, D and E, with easements in favor of lots A and B over lots C, D and E, as shown on the accompanying sketch.

On February 20, 1952, appellants conveyed lot C and an undivided $\frac{1}{2}$ interest in lot E to appellees, subject to an easement of foot passage only, in favor of the owners or occupants of lots A and B, for ingress and egress to and from the sea over a portion of lot C, shown on the accompanying sketch as "Easement in favor of Lots A and B," and also an easement of foot passage only, in favor of the owners or occupants of lots A and B, for access to the easement on lot C over a portion of lot E, also shown on the accompanying sketch as "Easement in favor of Lots A and B."

On April 1, 1953, appellees' counsel sent a letter to appellants. In this letter the counsel stated to appellants that at the time that they sold lot C and the undivided $\frac{1}{2}$ interest in lot E to appellees it was the understanding of the parties that appellants would convey such undivided interest in lot E to appellees as a roadway to be used in common only by the owners or occupants of lots C and D for ingress and egress to and from such lots but that through an error or for some other reason the deed as prepared and delivered did not state the true intention of the parties. He then made a demand upon appellants to execute a reformed deed which would conform to the intention of the parties at the time the transaction was entered into and gave notice to appellants that he was in-

structed by appellees to file a suit for reformation of the deed if appellants did not execute a reformed deed satisfactory to appellees by April 7, 1953. Appellants received this letter on April 3, 1953.

On April 13, 1953, appellees filed their first suit for reformation of the deed. This suit was voluntarily discontinued without prejudice by appellees on September 2, 1953. On October 6, 1953, appellants filed a motion for an order for the dismissal of the suit with prejudice and an award of attorney's fees, costs and other losses suffered by them as a result of the filing of the suit.

On November 24, 1953, while appellants' motion in the first suit was still pending, appellees filed their second suit against appellants. The allegations of the petition in this suit were identical, word for word, with the allegations in the first suit. This suit was dismissed by the circuit court on June 1, 1955, with prejudice, after a trial on the merits.

Appellants filed the instant action on August 2, 1955, soon after the dismissal of appellees' second suit. The action was tried by the circuit court without a jury. At the conclusion of appellants' case in chief, appellees moved for a nonsuit. The court granted the motion and entered the judgment of dismissal.

Appellants raise two points on this appeal, first, that the circuit court erred in looking behind the decree in appellees' second suit for reformation of the deed to discover reasons for dismissing the instant action, and, second, that the court erred in dismissing the instant action despite a clear showing in the record that plaintiff made out a prima facie case of malicious prosecution, which threw the burden of showing probable cause for the bringing of the two suits upon defendants.

The first point is based on the following statement of the circuit court in granting appellees' motion for a nonsuit: "I'm satisfied beyond any doubt the defendant herein had probable cause to file a suit. The whole case, in 5890 [second suit], went on the credibility of witnesses. The Court could have gone either way. The Court believed the witnesses for the respondents and didn't believe the witnesses for the petitioners and therefore ruled for the respondents. I'll find that there was sufficient cause for filing this suit. The motion for a nonsuit is granted."

When the court made the statement, appellants' counsel inquired,

"Do I understand your Honor is going behind the decision of the first Court, Judge McGregor's Court, in reaching its decision on this nonsuit or on the evidence in this case?" In reply to this inquiry, the court stated, "The Court further finds from all the evidence adduced that the respondents herein had probable cause in filing this suit."

Thus, the court made it clear that in granting appellees' motion for nonsuit it did not go behind the decree in the second suit but did so on the basis of the evidence adduced in the instant action. Appellants' first point on appeal is without merit.

With regard to the second point, appellants contend that they made out a prima facie case of malicious prosecution by showing that appellees filed their second suit for reformation of the deed after they voluntarily discontinued their first suit for the same relief and that the second suit terminated in appellants' favor. Appellants rely on the statement in 34 Am. Jur., *Malicious Prosecution,* § 63, that "In contrast to the rule as to the nonprobative effect of an abandonment or dismissal of a criminal prosecution, the voluntary dismissal of a civil action has been held to be prima facie evidence that it was instituted without probable cause, and to throw upon the defendant the burden of showing that there was probable cause for bringing the action." The authority for that statement is *Kolka* v. *Jones,* 6 N.D. 461, 71 N.W. 558, where the court stated: "It is well settled that the voluntary dismissal of a suit is prima facie evidence of want of probable cause. * * * Such dismissal, unexplained, is as cogent evidence of want of probable cause as the failure of the prosecutor in a criminal action to make out a sufficient case to satisfy a committing magistrate."

A careful reading of *Kolka* v. *Jones* shows that it does not support appellants' position. In addition to the statement quoted above, it contains the following statement: "The rule of evidence which we uphold and apply in this case is one which creates a mere presumption. * * * If the plaintiff has probable cause for commencing his suit, the dismissal thereof will not render actionable the institution of such suit. It will merely call upon him to show that there was in fact probable cause for bringing the action. * * * In Asevado v. Orr, 100 Cal. 293, 34 Pac. 777, the court decided that the voluntary dismissal of an action by the plaintiff is not an admission of

want of probable cause. No one ever supposed it was. By discontinuing his suit the plaintiff therein does not forever concede that he had no probable cause for commencing it."

The facts in *Kolka* v. *Jones* were as follows: Kolka owed $12 to one Gresczykowski, and the latter placed the claim with Jones for collection. Jones brought two successive actions in the name of Gresczykowski against Kolka. He voluntarily discontinued both actions. Thereafter, he sued Kolka in his own name. When he filed his third action, he knew that Gresczykowski had settled with Kolka. He was found liable for malicious prosecution for suing Kolka for the third time. The court was of the opinion that he was not liable for filing the first two actions. It stated: "Without at this conjuncture adverting further to the facts, we may pause and inquire whether the first two actions were instituted by Jones in the name of Gresczykowski without probable cause. However maliciously they may have been carried on is immaterial, unless Jones was in law without probable cause for believing that they could be maintained. * * * In this case we have no doubt that Jones was, as a matter of law, justified in believing that Gresczykowski had a valid claim against Kolka. * * * It is apparent therefore, that, when Jones brought the first two suits in the name of Gresczykowski, he had probable cause for so doing, and that, therefore, no action for malicious prosecution can be predicated upon the commencement and dismissal of these two actions."

We think that *Kolka* v. *Jones* states sound law. It stands for the proposition that the plaintiff in a malicious prosecution action makes out a prima facie case of want of probable cause by showing that the defendant voluntarily discontinued his action against the plaintiff but that such prima facie case may be overcome by other evidence. It does not hold that the evidence to overcome the prima facie case must necessarily be adduced by the defendant. The evidence adduced by the plaintiff may show the existence of probable cause. (*Taylor* v. *American International Shipbuilding Corp.*, 275 Pa. 229, 119 Atl. 130.)

In the instant action, when appellees moved for a nonsuit, the circuit court had before it a map showing the subdivision of appellants' land into lots A, B, C, D and E, with easements in favor of lots A and B over lots C, D and E, and a copy of the deed from

appellants to appellees. The map and the copy of the deed had been offered in evidence by appellants themselves. They showed these undisputed facts: that appellants executed a deed by which he conveyed all of lot C and an undivided ½ interest in lot E to appellees; that under the deed a portion of lot C, consisting of a narrow strip along the boundary of lot D was subject to an easement of foot passage only in favor of the owners or occupants of lots A and B for ingress and egress to and from the sea, and a portion of lot E, at the apex of the lot, was also subject to an easement of foot passage only in favor of the owners or occupants of lots A and B for access to the easement on lot C.

It appears from the letter of appellees' counsel to appellants, written shortly before the filing of the first suit, that it was appellees' understanding that lot E was a private roadway for the use of lots C and D only. There are two things in the deed which made it reasonable for appellees to think that their understanding was correct and gave them probable cause to file the suit, namely, the fact that appellants conveyed an undivided ½ interest in lot E to appellees and the fact that appellants made the conveyance of lot E subject to an easement in favor of the owners or occupants of lots A and B and imposed such easement only on a very limited portion of lot E.

The conveyance of an undivided ½ interest in lot E to appellees made it appear that appellants had originally contemplated conveying the remaining undivided ½ interest to the purchaser or purchasers of lot D. If appellants had contemplated that lot E should serve as a complete roadway for lots A and B, as well as for lots C and D, they could have precluded appellees from asserting their claim for reformation of the deed by conveying to appellees only an undivided ¼ interest in lot E.

The description of the easement to which lot E was subjected gave further appearance that appellants had originally contemplated unrestricted use of lot E as a roadway by the owners or occupants of lots C and D only. Appellants could have provided for unrestricted use of lot E as a roadway by the owners or occupants of lots A and B in one of two ways, namely, by conveying undivided interests to the purchasers of lots A and B, or by granting to the purchasers of lots A and B easements to use all of lot E as

a roadway. If appellants had either method in contemplation, the grant of restricted easement over a portion of lot E would have been superfluous. The easement that appellants provided in the deed to appellees was confined, as to area, to the minimum area necessary to afford lots A and B access to the easement on lots C and D for ingress and egress to and from the sea, and was limited, as to use, to foot passage only.

The probable cause that appellees had for the filing of their first suit continued in existence until the disposition of their second suit. The only change in situation that occurred in the meantime was appellees' voluntary discontinuance of their first suit. Appellants established a prima facie case of want of probable cause by proving such voluntary discontinuance. If they had stopped there, they would have thrown upon appellees the burden of overcoming the prima facie case thus established. But they called Herbert Baker, one of appellees, as an adverse witness and elicited from him the testimony that the first suit was discontinued because appellees' original counsel was unavailable for further service, further prosecution of the suit would have entailed additional expense, and appellees hoped to obtain relief by making a direct and concerted appeal to the City Planning Commission. This testimony showed that appellees discontinued the suit for reasons other than want of probable cause.

Appellants question the good faith of appellees' reasons for the discontinuance of the first suit. The reasons for the discontinuance were immaterial, so long as they did not constitute admission of want of probable cause. Appellants also question appellees' motive in filing the second suit. Again, such motive was immaterial, for motive is relevant only to the question of malice and here we are concerned not with malice but with the question as to whether appellees had probable cause to file the two suits against appellants.

On the undisputed evidence, the circuit court did not err in concluding that appellees had probable cause to file the suits. We think that the following statement in *Taylor* v. *American International Shipbuilding Corp., supra,* is applicable here:

"It is exclusively for the jury to pass on testimony, but the court must say, as a matter of law, whether the facts proven

show probable cause. Generally, it is a mixed question of law and fact, and, where the facts are in dispute, they must be submitted to the jury, who should be instructed as to what facts constitute probable cause. But, if all the admitted facts, and the reasonable inferences therefrom, amount to probable cause, the court must so declare, and direct a verdict for defendant: * * * Particularly is this true where plaintiff's own evidence shows the existence of probable cause: * * *

"The jury is not at liberty to find a fact without evidence, and if all the admitted facts on both sides amount to probable cause, the court should direct a verdict for defendant, even if malice is clearly proven: * * *"

Appellants, for the first time in their reply brief, raised the point that the failure of the court to make findings of fact under rule 52(a) of Hawaii Rules of Civil Procedure constitutes reversible error. The statement of questions on appeal set forth in the opening brief did not include that point. Under rule 3(b)(3) of the rules of this court, we ordinarily do not consider any point which is not set forth in or necessarily suggested by the statement of questions involved. A question affecting the jurisdiction of this court may be raised at any stage of the appeal. But compliance with the requirement of rule 52(a) with regard to findings of facts is not a jurisdictional requirement of appeal. (*Tugaeff* v. *Tugaeff*, 42 Haw. 455, 468; 2 Barron & Holtzoff, *Federal Practice and Procedure*, Rules. Ed., § 1123; 5 Moore's Federal Practice, § 52.06[2].) The ruling under the Federal rules, as stated in *Hurwitz* v. *Hurwitz*, 136 F. (2d) 796, 799, and uniformly followed by the United States courts of appeals, is as follows: "The duty of the trial court to make findings of fact should be strictly followed. But such findings are not a jurisdictional requirement of appeal which this court may not waive. Their purpose is to aid appellate courts in reviewing the decision below. In cases where the record is so clear that the court does not need the aid of findings it may waive such a defect on the ground that the error is not substantial in the particular case. That is the situation here."

Affirmed.

330

C. *Nils Tavares* and *Edward Berman* (*Edward Berman* on open-ing. brief; *Edward Berman* and C. *Nils Tavares* on reply brief) for plaintiffs-appellants.

·*A. William Barlow* and *Morio Omori* (*A. William Barlow* on the brief) for defendants-appellees.