OSCAR M. MAYER and MARGARET H. MAYER, Plaintiff-Appellants, *v.* ALEXANDER AND BALDWIN, INC., a Hawaii corporation, Defendant-Appellee

NO. 5468

ALEXANDER AND BALDWIN, INC., a Hawaii corporation, doing business as A & B Commercial Company, Plaintiff-Appellee, *v.* JOHN M. MINER, Defendant-Appellant, and ABE CONSTRUCTION, INC., a Hawaii corporation, Defendant

NO. 5469

ALEXANDER AND BALDWIN, INC., a Hawaii corporation, doing business as A & B Commercial Company, Plaintiff-Appellee, *v.* GLENN T. SKEELS and MARGARET T. SKEELS, Defendants-Appellants, and ABE CONSTRUCTION, INC., a Hawaii corporation, Defendant

NO. 5470

ALEXANDER AND BALDWIN, INC., a Hawaii corporation, doing business as A & B Commercial Company, Plaintiff-Appellee, *v.* JACK E. VOCKRODT and EU-

PHRENCE F. VOCKRODT, Defendants-Appellants, and ABE CONSTRUCTION, INC., a Hawaii corporation, Defendant

NO. 5471

MARCH 3, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA, AND MENOR, JJ., and RETIRED JUSTICE LEWIS
Assigned by Reason of Vacancy

OPINION OF THE COURT BY LEWIS, J.

Alexander and Baldwin, Inc., through its division A & B Commercial Company, hereinafter referred to as "A & B," became surety on performance bonds for the construction by Abe Construction, Inc. of homes for appellants, hereinafter referred to as "owners." There were four separate contracts.

After partial performance of each contract, the contractor, in July, 1969, abandoned the work and ceased doing business. On July 10, 1969, A & B notified the several owners that, as surety, it would complete the work. Litigation ensued, and the four cases were consolidated for trial and disposition on appeal. Only A & B and the owners are involved in this appeal.

A principal question in all the cases is the liability of the surety for damages for delay in performance. It is undisputed that the homes were not completed within the time agreed in the contracts.

Each of the performance bonds provided in pertinent part:

> NOW THEREFORE, the condition of this obligation is such that if the above named Principal shall, in all things well and truly keep, observe and perform the covenants, condition and agreements of said Contract, and at the time and in the manner and form therein specified, * * * then this obligation shall be void; otherwise it shall be and remain in full force and effect.

> \*      \*      \*      \*      \*

> PROVIDED, ALSO, that the Surety shall not be liable * * * for the furnishing of any bond or obligation other than this instrument, nor for damages caused by delay in finishing such Contract.

The court held that under the express provisions of these bonds the surety was not liable for delay. We agree. The owners contend that the provisions above quoted are in conflict with each other, hence ambiguous, but that is not the case. Attention now will be given to the condition of the bond.

We need not go into the question whether "time is of the essence" in a building contract. As stated in 6 WILLISTON, CONTRACTS, § 846, p. 183 (3d ed.): "Even where time is not of the essence, it is generally true that an unreasonable lapse of time may be fatal." When time is of the essence or a delay has become so serious as to justify discharge of the contractor, an

owner may assume control of the work, cause it to be completed, and hold the contractor for his reasonable expenditures if in excess of the unpaid balance of the contract price. *McKnight v. Renfro*, 371 S.W.2d 740 (Tex. Civ. App. 1963) (time of the essence); *Phillips v. Green Street Corporation*, 143 Ind. App. 30, 237 N.E.2d 590 (1968) (upholding a general contractor's right to discharge the sub-contractor); *Johnson v. Slaymaker*, 18 Ohio Cir. Ct. Reps. 104 (1898) (allowing the remedy of taking over the work, and holding the contractor for the excess cost of completion and also the remedy of damages for delay in completion.[1]

Here the contractor concededly abandoned the work, and the remedy of taking over the work and holding the contractor for the excess cost of completion did not come into play. It did not come into play for another reason also, that is, the surety undertook the completion of the work. It is conceded that the surety had the option to do that.[2] The fact remains that under the provisions of the bond as to performance of the work "at the time * * * specified," the circumstances might have been such as to permit the owners to look to the surety for the completion of the contracts on account of the contractor's delay, the same as in a case of abandonment. The provision of the bond that the surety would not be liable for "damages caused by delay in finishing such Contract" simply deleted from the bond the remedy of damages for the delay itself. There is no conflict or ambiguity. As to the contention that "an exculpatory clause for delay in a construction contract is strictly construed against exculpation, and is not absolute," we do not deem this rule applicable if indeed there is such a rule. "There is no principle of law better settled than that a surety has the right to stand upon the very terms of his contract." *Territory v. Pacific Coast Casualty Co.*, 22 Haw. 446, 450 (1915).[3]

---

[1] We need not and do not decide whether these two remedies are cumulative. *See* M. J. Daly & Sons v. New Haven Hotel Co., 91 Conn. 280, 293-4, 99 A. 853, 858 (1917); *cf.*, East Arkansas Lumber Co. v. Swink, 128 Ark. 240, 194 S.W. 5 (1917).

[2] *See* Honolulu Iron Works v. Bigelow, 33 Haw. 607, 614 (1935).

[3] The owners concede that "limitations on time of suit are a special case * * * ." Honolulu Roofing Co. v. Felix, 49 Haw. 578, 599 (1967).

The court found that the work undertaken by the surety through the contractors it employed, was completed within a reasonable time. The owners do not contest this finding except on a point of law. They contend that "the exculpatory clauses in the bond were [not] intended to apply to an exercise by the surety of its right to complete the contract * * *." This contention would be well taken if the surety had failed to render timely performance after taking over the work. However, that is not the case. To contend that the surety's time for performance was limited to the 120 working days from the date of start of construction stipulated in the contract and that the surety is liable in damages for time elapsed beyond that point, is to argue full circle. What has been said disposes of the question of damages for delay except for the owners' contention that: "Regardless of the limitations upon the liability of the surety contained in the bond, by electing to complete the contract the surety subjected itself to all claims of the obligees against the contractor, arising under the contract."

If the surety had not elected to complete the contract, each owner's recourse on the bond would have been, after completion of the contract, a suit to recover his reasonable expenditures to the extent they were in excess of the unpaid balance of the contract price. For example, if the contract price was $25,000 of which $23,500 had been paid to the contractor before he abandoned the work, and $3,100 was expended by the owner to complete the work, the damages sustained by reason of the abandonment of the work would have been $1,600. In a suit on the bond the unpaid balance of the contract price, $1,500, would have been applied against the $3,100,[4] and the excess of $1,600 would have been recovered. Thus the loss to the surety would have been a total of $1,600.

---

[4] The contract did not provide for retainage of any portion of the contract price as a fund to guarantee performance. Cf., Henegan v. United States, 17 Ct. Cl. 273, 286 (1881); Honolulu Iron Works v. Bigelow, supra, 33 Haw. 607, 613 (1935). Nor did it provide for liquidated damages. Cf., Transamerica Insurance Co. v. McKeesport Housing Authority, 309 F. Supp. 1321 (W.D. Pa. 1970); Ramlose v. Dollman, 100 Mo. App. 347, 73 S.W. 917 (1903).

Since the surety did elect to complete the contract, it is the surety who put up the money required for completion instead of the owner. In essence the question is: In this situation, can the owner accomplish indirectly what he could not accomplish directly, by recouping or offsetting against the surety's claim for the unpaid balance of the contract price damages for delay in the amount found by the court, for which the surety is not liable?[5] We hold that he cannot.

In recognition of the need to encourage a surety on a performance bond to undertake the completion of the work by placing a completing surety in as favorable a position as it would have enjoyed if it had elected not to complete, such a surety has been accorded a right of subrogation more extensive than that of a surety on a payment bond. *United States v. Munsey Trust Co.*, 332 U.S. 234, 244 (1947). When a surety on a performance bond completes the work, the surety is not only a subrogee of the contractor but also a subrogee of the owner as to the unpaid balance of the contract price, and in the latter capacity stands the same with respect to application to the cost of completion of the funds representing the unpaid balance of the contract price as the owner would have stood if it was he who completed the work. *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317 (5th Cir. 1967); *Security Insurance Company of Hartford v. United States*, 428 F.2d 838 (Ct. Cl. 1970). In the example above given, the amount to be applied against the $3,100 expended to complete the work still would be $1,500, and the loss to the surety would remain at $1,600 though it was the surety who completed the work.

In so holding we go one step further than the cases above cited. There the setoff claimed by the owner arose out of a different transaction. However, the reason back of the subrogation rule applicable to a completing surety compels the conclusion reached.

---

[5] Recoupment is an affirmative defense which does not necessarily depend on the right to counterclaim. Basic Boats, Inc. v. United States, 311 F.Supp. 596, 598 (E.D. Va. 1970); 2 MOORE, FEDERAL PRACTICE § 8.27 [3], p. 1856, notes 24 and 25 (2d ed. 1974). As to the nature of recoupment, *see* Erickson v. Volcano Stables and Transportation Company, Ltd., 13 Haw. 428, 430 (1901).

This completes our review of the points raised in all four cases. We turn to examination of individual points. In this review we apply the usual rule that a finding will be sustained unless clearly erroneous,[6] also the rule that insufficiency of the findings may be waived by the appellate court if, but only if, the record is so clear that the court does not need the aid of findings. *Lalakea v. Baker*, 43 Haw. 321, 329 (1959); *Upchurch v. State*, 51 Haw. 150, 154, 454 P.2d 112 (1969).

### *No. 5468 — Mayer*

Owners Mr. and Mrs. Mayer contend that they were obliged to have work done to complete the contract, at a cost of $635.96. We affirm the court's finding that the proof was insufficient to show that this work was covered by the original contract. However, we conclude that the record shows the Mayers are entitled to a credit of $48.80 for the difference between colored and white cast iron tubs. The court made no finding on the point.

Mr. Mayer testified that 2″ x 4″ fir decking was used by the contractor when 2″ x 6″ cedar decking was called for. The plan is contradictory, showing 2″ x 4″ in one place, while 2″ x 6″ cedar decking is specified in another. There was testimony that Cedar Homes, Inc., from which most of the material was obtained, did furnish 2″ x 6″ cedar decking but this was transferred to another site by the contractor. We think there should have been a finding on the point, also a determination of the amount, if any, required to compensate for defects in the decking. *See Honolulu Roofing Co. v. Felix*, 49 Haw. 578, 597, 426 P.2d 298 (1967).

### *No. 5469 — Miner*
### *No. 5470 — Skeels*

Owners Miner and Skeels raised the same question as to the decking as was raised in No. 5468, and our decision is the same.

---

[6] HRCP Rule 52(a).

*No. 5471 — Vockrodt*

The court held owners Mr. and Mrs. Vockrodt liable for extras in the amount of $4,939.60. Mr. Vockrodt on August 19, 1969 signed a memorandum of agreement with the surety, headed "Agreed Extras to be Done: to Complete Job."[7] The court relied on this agreement.

There were no specifications for the Vockrodt houses. Mr. Vockrodt made oral arrangements with the contractor, with whom he had done business before. Under the contract and bond these oral arrangements were not binding on the surety. The contention that at the time of signing of the agreement, the surety already was obligated to furnish the items listed in the agreement is without support in appellants' briefs. As to the contention that the agreement was signed under pressure because of the surety's insistence on a written agreement before getting on with the job, we note that duress was not pleaded.[8] Moreover, it has not been shown that the demand for a written agreement was unjust or unlawful. *Cf., Kobatake, Inc. v. Kuwaye Brothers, Inc.*, 56 Haw. 39, 526 P.2d 1205 (1974). No error has been shown. This is true also as to the court's finding as to the amount owing for the extras.

In Nos. 5468, 5469 and 5470, the judgments are affirmed except insofar as the court may find in favor of the appellants on the issue as to the decking, and subject also, in the Mayer case, to the allowance of a credit of $48.80 pursuant to this opinion.

In No. 5471, the Vockrodt case, the judgment is affirmed.

*Charles R. Wetter (Lanza, Kohne, Wetter* and *Moen* of counsel) for appellants Oscar M. Mayer, et al.

*William F. Crockett (Crockett* and *Crockett* of counsel) for appellee Alexander and Baldwin, Inc.

---

[7] There is no contention that Mrs. Vockrodt was not bound by this agreement if binding on Mr. Vockrodt.

[8] HRCP Rule 8(c).

*Patrick F. Tuohy* for defendant-appellant.

*Terrance W. H. Tom*, Deputy Prosecuting Attorney *(Barry Chung*, Prosecuting Attorney, with him on the brief) for plaintiff-appellee.